NEDERLANDER *v.* CADILLAC CLAY CO.

1. LANDLORD AND TENANT—DUTY OF TENANT TO MAKE REPAIRS..
    Under provision in lease that tenant keep part of building leased by it in repair, it was not required to repair defects in any other part of building.

2. SAME—DUTY OF LANDLORD TO MAKE REPAIRS WHERE BUILDING LEASED BY OTHER TENANTS.
    That second story was leased to another tenant would not relieve landlord from duty of seeing to it that water pipes in it were in such condition as not to render premises on first floor in untenantable condition.

3. SAME—DUTY TO REPAIR PART OF BUILDING OVER WHICH TENANT HAS NO CONTROL.

Rule that, in absence of covenant, landlord is not required to keep leased premises in repair has no application where premises are rendered untenantable by condition existing in another part of building over which tenant has no control.

4. SAME.

Where drain pipe running from roof to ground on outside of building leased to different tenants on first and second floors became broken, resulting in damage to tenant on first floor, it was duty of landlord to make proper repairs, on being notified of break, notwithstanding lease required said tenant to keep in repair premises leased by it.

Appeal from Wayne; Collingwood (Charles B.), J., presiding. Submitted June 21, 1933. (Docket No. 53, Calendar No. 37,244.) Decided October 2, 1933.

Assumpsit by David T. Nederlander against Cadillac Clay Company, a Michigan corporation, for rent due under a lease. Verdict for plaintiff for alleged insufficient amount was set aside and judgment entered for amount claimed. Defendant appeals. Reversed, and new trial granted.

*Ben O. Shepherd,* for plaintiff.

*Clark, Klein, Ferris & Cook* (*Sydney A. Jacobs,* of counsel), for defendant.

SHARPE, J. On September 29, 1921, the defendant company entered into a written lease of the first floor and basement of premises known as 1442-1444 Park in the city of Detroit for the term of 10 years from and after November 1, 1921, from Wil-

liam B. Morgan. It contained the following paragraph:

"And also, that said party of the second part will at its own expense, during the continuance of this lease keep the said premises and every part thereof in as good repair, and at the expiration of the term, yield and deliver up the same in like condition as when taken, reasonable use and wear thereof and damage by the elements excepted."

On or about July 31, 1930, the defendant vacated the premises for reasons hereafter referred to. On April 1, 1931, the plaintiff, who had succeeded to the rights of Morgan under the lease, brought this action to recover the rent claimed to be due thereunder from June 1, 1930, to and including the month of March, 1931, at $325 per month. On trial before the court and a jury he had verdict for the rent for June and July, 1930, and interest thereon. On motion for judgment notwithstanding the verdict, the trial court set the verdict aside and entered judgment for the amount claimed, $3,575, from which the defendant has appealed.

The premises were occupied by the defendant for office and show-room purposes. The building was two stories in height, the upper being used by another tenant for hotel purposes. Water pipes were laid between the steel ceiling of the lower story and the floor above. It is the claim of the defendant, and does not seem to be disputed, that in 1928 the water began dripping from the ceiling, necessitating the placing of receptacles around the rooms occupied by defendant to catch it; that a portion of the steel ceiling became rotten and finally gave way, and that defendant's employees sought, and were denied, admission by the occupant to the rooms above to ascertain the cause thereof.

It also appears that a drain pipe located along the outside wall of the building, and running from the roof to the ground, became broken, and that considerable water therefrom came into defendant's premises.

The defendant made many complaints about these conditions to the plaintiff and to the Lambrecht-Kelly Company, which had charge of the property for him. On June 9, 1930, it gave this firm a written notice, stating therein:

"Relative to repairs that are necessary about which you have been notified several times.

"It is absolutely essential that these repairs are made immediately to make the place tenantable. Unless same is taken care of promptly we will be forced to vacate the premises."

On July 3, 1930, defendant's attorneys wrote, calling their attention to the fact that notices of the condition of the premises had been given them "on innumerable occasions," and that the defendant could not longer occupy the premises and would vacate them on August 1, 1930, which it did.

The trial court instructed the jury that under the provision in the lease above quoted no obligation rested upon the plaintiff to prevent the water dripping from the ceiling. He submitted to them the question as to whether the water from the drain pipe rendered the premises untenantable, and their verdict indicates that they so found. Their finding of liability was limited to the two months' rent which defendant admitted it owed at the time it vacated the premises. There was proof that the drain pipe was quite promptly repaired, and his action in setting aside the verdict and entering the judgment was doubtless based upon his finding that

this question should not have been submitted to the jury.

The question here for decision is whether the defendant, under the terms of the lease, was obligated to repair the water pipes placed between the ceiling and the floor above. Its lease entitled it to the use and occupation of the "first floor and basement" of the building. The ceiling was a part of the first floor as thus described, but the water pipes above it were not. When the defendant sought to discover the cause of the leakage, it was denied access to the rooms above by the tenant therein. It would seem to be elementary that under the provision in the lease the defendant was obligated to keep the part of the building leased by it in repair, but was not required to repair defects in any other part of the building. 36 C. J. p. 147.

In a recent case decided by this court (*Everson v. Albert,* 261 Mich. 182, 186), it was said:

"The situation was such that defendant could not repair the frozen water mains or alter the condition which caused the pipes to freeze without himself being a trespasser in portions of the property not covered by his lease; nor could he do so without tampering with the water supply of other tenants. It seems to be the rule in cases where the landlord retains possession or control over a portion of the premises that he is bound to keep the portion of the premises under his control in such condition of repair as will not interfere with the peaceable possession and enjoyment by the tenant of that portion which he has leased."

Referring to this decision, counsel for the plaintiff says:

"This is good law but does not apply in the present case, for the reason that there was no portion

of these premises kept under the control of the landlord. The first floor and basement was leased to the appellant, while the second floor, together with its entrances, was leased for the hotel, and the landlord had no control over the premises.''

The fact that the second story was leased to another tenant surely would not relieve the plaintiff from the duty of seeing to it that the water pipes in it were in a condition such as would not render the premises leased by the defendant in an untenantable condition.

The authorities cited and relied on by plaintiff's counsel (*Petz* v. *Voight Brewery Co.*, 116 Mich. 418 [72 Am. St. Rep. 531]; *Lieberthal* v. *Montgomery*, 121 Mich. 369; *Bowen* v. *Clemens*, 161 Mich. 493 [137 Am. St. Rep. 521]) sustain the rule that, in the absence of covenants, a landlord is not required to keep the premises leased in repair, but this rule has no application if the premises were rendered untenantable by a condition existing in another part of the building over which the tenant had no control. If leakage was also caused by the break in the drain pipe, it was no less the duty of the plaintiff to make repair thereof on being notified of its condition.

The judgment entered notwithstanding the verdict will be set aside and a new trial granted, with costs to the defendant.

McDONALD, C. J., and POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred. CLARK, J., took no part in this decision.