FERRILL *v.* COLLINS.

5-616                                                281 S. W. 2d 939

Opinion delivered June 27, 1955.

[Rehearing denied October 3, 1955.]

*H. B. Stubblefield,* for appellant.

*Carroll C. Cannon* and *Giles Dearing,* for appellee.

LEE SEAMSTER, Chief Justice. This suit involves a written lease agreement between the appellant, the lessor and the appellee, the lessee, whereby certain business property located in Wynne, Arkansas was leased to appellee for a seven year period.[1] Appellant filed suit in St. Francis Circuit Court seeking to recover damages in the amount of $10,012.22 against the appellee based on the alleged breach of the provisions of said lease to make repairs to the property and surrender the premises in good condition at the termination of the lease. The appellee filed a cross-complaint containing two counts. Count I alleged water damage of $2,000 to appellee's goods, wares, merchandise and fixtures due to appellant's failure to repair the roof of the building as required by the terms of the lease and Count II alleged fraudulent representations on the part of the appellant whereby appellee was led to believe that a new lease would be tendered at the expiration of the old lease and appellee purchased large quantities of merchandise which he subsequently had to dispose of at a loss of $7,900.

On April 1, 1946 the lessee, E. M. Collins, entered into a written lease agreement with the lessor, Eugenia B. Ferrill whereby he leased the ground floor of a two story business building for a period of seven years. The contract details obligations of upkeep, enjoining upon the lessee a duty to take good care of the property at his own expense, making all inside and outside repairs, including sidewalks, windows, glass, and inside painting. At the termination of the lease period the premises were to be returned in good order and condition. The lessor was not to be called upon for any outlay whatsoever, except to make a conscientious and reasonable effort to keep the roof in good repair. A covenant in the lease excluded the lessee from use of the second floor where

---

[1] This is the second appeal in this case. See *Ferrill* v. *Collins,* 222 Ark. 840, 262 S. W. 2d 885.

the lessor had certain merchandise stored therein. The door to the second floor was kept locked at all times.

The lease expired March 31, 1953. Conversations relating to the drafting of a new lease occurred from time to time, starting in September, 1952. These discussions culminated in the drafting of a tentative contract which was written by the attorney of the appellant. This proposed contract was presented to Collins on February 26, 1953 at which time he asked for and secured additional time so that he might examine the contents of the proposed contract more thoroughly. Collins took a copy of the proposed contract to Forrest City where he had his attorney examine and copy the proposed contract. He contended that the new contract was unacceptable because it required construction expenditures inconsistent with what had been thought to be Ferrill's assurances of renewal, and it limited the duration of the lease to a term of 39 months with no option to renew the lease. He also objected to the paragraph that limited his business activities in Wynne to this one store.

On March 4th the landlord wrote Collins whereby demand was made for possession of the premises by March 31st. A suggestion was that Collins remove his air conditioning unit at once in order that any repairs rendered necessary either by installation or removal could be made by the lessee before March 31st. Other repairs and restorations, except archways and the two front entrances, were to be made by March 31st. Attention was directed to a contractual provision extending to the lessor a specific time within which to give notice regarding restoration of the archways and front entrances.

In reply, Collins wrote March 28th that there was a hole in the plaster near the rear of the building that he felt he should repair; also there might be some other work that would fall upon him under terms of the lease, but he had not checked this building with this thought in mind. Ferrill thought that he received the keys to the building from Collins on April 3, 1953.

On April 27, 1953, Eugenia B. Ferrill sued Collins for $10,012.22. For necessary inside repairs and conditioning she asked $2,467.22; for outside work $5,945; and for the reasonable rental value of the premises $400 per month for four months, or $1,600.

Collins' answer was coupled with a cross-complaint containing two counts. The jury found for Collins on appellant's complaint and awarded him the sum of $3,500 on his cross-complaint without making any apportionment as to the two counts.

The appellant urges four grounds for reversal. Initially it is insisted that the court erred in excluding evidence relating to repairs to the second floor of the building, and in giving an instruction requested by counsel for Collins. By this instruction the jury was told that Collins was not required to make repairs to any outside portion of the leased premises except that he was obligated to maintain the sidewalk, the windows of the first floor, glass in the first floor of the leased premises and outside painting to the first floor, etc.

The court's error, it is said, was the failure to give effect to Collin's obligation to make repairs, "including . . . windows, glass, and all outside and inside painting, and to conform to all reasonable regulations governing said building . . . and to make any reasonable repairs . . . that the lessor may deem necessary for the protection and preservation of said building and its appurtenances."

What the appellant fails to consider is that the contract (Paragraph II) from which the excised quotation is taken—including deletions as they appear in the brief —begins with this language: "The lessee hereby covenants and agrees to take good care of the *leased premises* and at all times to keep the same in good and proper repair and condition at his own cost and expense, making all inside and outside repairs, including all sidewalks, windows, glass, and all outside and inside painting, . . . the lessor is to make a conscientious and reasonable effort to keep the roof of the building in good repair

. . . .'' The 8th paragraph of the 1946 lease states: "It is further understood and agreed that the lessee is not to have access to the second floor of the building." The *leased premises* in so far as Collins was concerned could mean nothing but the ground floor. He was expressly forbidden access to the second floor. The lease was prepared by Mrs. Ferrill's agent and it is not ambiguous. The objection cannot be sustained.

The trial court rightfully held that under the instant lease, the appellee was not required to make repairs or improvements to the second floor which was that part of the building not under his control as demised in the lease. In determining the construction of the lease, the court had to look to the whole contract in order to determine its meaning and had to reconcile paragraphs 1, 2 and 8. A tenant's covenant to keep premises in repair did not extend to parts not under tenant's control. *Capital Amusement Co.* v. *Anheuser-Busch, Inc.*, 94 Colo. 372, 30 P. 2d 264; *Rathbun Co.* v. *Simmons,* 90 Cal. App. 692, 266 P. 369; *Mederlander* v. *Cadillac Clay Co.,* 264 Mich. 434, 250 N. W. 281. The construction put upon the 1946 lease by the appellant, would require the lessee to repair the entire building and would be in direct conflict with paragraph 8 which denies tenant access to the second floor and with the expressed terms of the paragraph of the lease which provides that the lessor is to keep the roof of the building in good repair.

Appellee's instructions Nos. 6 and 7 dealing with damage to the merchandise through failure of the landlord to satisfactorily repair the roof are alleged to be erroneous. Mrs. Ferrill's commitment was to make a conscientious and reasonable effort to keep the roof in good repair. The evidence shows that on one occasion she spent eight dollars to stop leaks. But there is substantial testimony that Collins complained of the condition. It is also true that shortly after repossessing the property an entirely new roof was placed on the building by the appellant. While standing alone this reconstruction is not conclusive of the proposition that the old roof

was virtually useless, it is a circumstance from which a factual inference of practical necessity could be drawn.

Attention is directed to *Kennedy* v. *Supnick*, 82 Okla. 208, 200 P. 151, 28 A. L. R. 1520, and Amer. Jur., Vol. 32, § 711, p. 588, which states: "As we have before said, the plaintiff had no access to or control over the upper part of said building. By the clause in said lease above quoted the first party agreed to keep said building in such repair that the party of the second part's stock of goods shall not be damaged by the elements. Under this provision in the lease it was not incumbent upon the plaintiff, Supnick, to give any notice whatever to Dr. Kennedy. It was Dr. Kennedy's business to see that the upper part of said building over which he had control was kept in such condition that the plaintiff's goods would not be damaged by any rains that might fall. On his failure to do this, he was liable for whatever damage the plaintiff might sustain." In the case at bar the tenant was expressly excluded from the second floor. He had no means, during rainy periods, of making an inside examination of the roof to identify small leaks. Certainly an outside examination would have been unsatisfactory unless the deterioration became obvious. Mrs. Ferrill's obligation was to make a *conscientious and reasonable* effort to keep the roof in good repair. It was for the jury to determine whether, in the light of competent evidence, a reasonable effort was made, and whether, in view of Collins' exclusion from the second story, he acted as an ordinarily prudent man to prevent progressive damage to his merchandise.

Instruction No. 8, given on request of counsel for Collins, permitted a recovery if it should be found (a) that Mrs. Ferrill assured Collins that the lease could be renewed in substantially the same form; (b) that if relying solely upon such representation Collins purchased large quantities of merchandise; (c) that if the representations were made at a time when the landlord did not intend to renew the lease in substantially the form of the old lease, and (d) if the representations were coupled

with fraudulent intention of putting Collins in a position where he either had to suffer a serious financial loss or execute a lease on unconscionable terms: if these facts were present and Collins sustained financial loss because of the conduct complained of, damages might be assessed in the sum to reasonably compensate him for such loss, but not exceeding the sum of $7,905.00.

Count II of the cross-complaint alleged that Mrs. Ferrill represented to Collins that it was her intention and purpose to execute a new lease substantially in the same form as the old one. There was no assertion that the assurance was fraudulently made to the determent of the appellee.

Collins was asked repeatedly regarding the representations of inducements held out by the Ferrills respecting a renewal of the lease, or the negotiation of a new lease. Finally, on cross-examination, he was admonished " . . . to be careful about this, and as correctly as you can tell what was said with reference to the building being yours." Quoting Ferrill he replied: "You have made us an excellent tenant and you know we are going to give you every consideration; so as soon as we can decide exactly what terms we want and how much we want for the building, we will proceed with the lease."

There was no showing of any definite statement or understanding to support Count II; it was speculative and indefinite; no evidence exists of its being the proximate cause of any damage to appellee; it refers to the future and not to the past or present; and the elements of fraud have not been proven. Therefore, no cause of action accrued against the appellant simply because she did not submit a contract that was acceptable to the appellee. An oral lease of land for more than one year is void under the Statute of Frauds. An option in a written lease to renew upon terms and conditions to be agreed upon is void for uncertainty. *Keating* v. *Mitchell,* 154 Ark. 267, 242 S. W. 563. See also *Hatch* v. *Scott,* 210 Ark. 665, 197 S. W. 2d 559.

Therefore, we must reject for want of substantial proof of promissory estoppel any allowance for misleading conduct incidental to renewal of the lease. The testimony indicates that the negotiations between the parties were indefinite and speculative as to the form and terms of the proposed lease. When asked about his objections to the proposed lease, Collins stated that the only terms and conditions that were objectionable to him were: the terms that called for him to make repairs to the building, which would include upkeep on the roof; the fact that the lease had a duration of only 39 months, with no option for renewal; and the clause in the lease that limited his business activity to this one business in Wynne.

We think that the trial court correctly sustained appellee's motion to strike all items for repairs to the second floor of the building involved and was correct in giving appellee's instruction No. 2. However, we think that the trial court should have directed a verdict in favor of the appellant on Count II of the cross-complaint and for the error in failing to do so that cause of action will have to be reversed, with directions to dismiss Count II of the cross-complaint. Since the amount of damages was not apportioned as to the two counts of the cross-complaint, the case is remanded for a new trial upon all issues except Count II of the cross-complaint.