Raymond J. ANDERSON and Phil B. Duncan and Lois V. Duncan, d/b/a Anchorage Blueprint Co., Appellants,

v.

Rae Bailey JACOBS, Appellee.

No. 148.

Supreme Court of Alaska.

Sept. 20, 1962.

Wendell P. Kay, Anchorage, for appellants.

John M. Savage, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

Appellants were lessees of appellee under a lease which contained an option to renew for a period of two years "upon terms and conditions to be mutually agreed upon between the parties hereto at the time this option of renewal is exercised". The main question to be decided is whether the provision is enforceable in the absence of mutual agreement.

The lease called for a monthly rental of $325 and expired on August 31, 1960. Appellants gave 90 days' written notice of their intention to renew as required in the lease. No steps were taken by either party to negotiate the terms and conditions of the renewal before the last day of the term.

On August 31, 1960 appellants forwarded their check in the sum of $650 to appellee advising that they desired to exercise their option to renew for a period of two years and that the sum submitted represented payment of the first and last months' rental on the renewal. At the time appellee received the check, appellants owed rental for

the months of June and July 1960 in the total sum of $650. On September 9, 1960 appellee advised appellants that the check was being applied on back rental owed; that appellee recognized no right of appellants to continue in possession of the premises beyond the expiration of the existing lease on August 31, 1960; that no new lease agreement had been reached and demanded that appellants quit and deliver up possession of the premises. Appellants replied on September 15, 1960 stating that by applying the proceeds of the check other than as directed, appellee had renewed the lease. Appellee replied on September 16, 1960 denying any intent to renew the lease, but offering to renew at a rental of $325 per month if appellants would pay the first and last six months' rental in advance. Appellee advised that this offer expired on September 22, 1960. Appellants' reply on September 28, 1960 apologized for the unavoidable delay in answering, rejected appellee's offer, but offered to pay the first and last two months' rental in advance on a renewal. Appellee's notice to quit the premises was served on appellants on September 30, 1960.

After trial of the controversy that grew out of the notice to quit, which was resisted by appellants, the district magistrate court found that no meeting of the minds regarding exercise of the option to renew was ever reached by appellants and appellee. The magistrate concluded as a matter of law that the option was unenforceable in the absence of agreement by both parties as to terms of renewal. Appellee had judgment for immediate possession and appellants appealed to the superior court. The superior court affirmed the judgment of the district magistrate court and appellants appealed to this court.

■ Appellants' main point is that appellee exercised tortious dominion over the $650 check which, according to appellants, was submitted on condition that it be accepted and used only if appellee agreed to the offer of renewal. The exercise of tortious dominion constituted an acceptance according to appellants' theory, which is based on the Restatement of the Law of Contracts.[1]

We do not find that the circumstances indicate that appellee's act was tortious. Appellants actually were indebted to appellee for two months' rental in arrears at the time and in the exact amount of the sum submitted with the offer to renew the lease. The check itself was simply marked "rent". The letter in which the check was enclosed referred to the check by number and specified that it was to cover rental for the first and last months of the lease renewal, but was not otherwise conditional. Appellee was prompt in notifying appellants that their offer to renew the lease was not acceptable and that the funds were being applied to rental in arrears. We can not perceive, nor have appellants pointed out, wherein they have been damaged.

Appellants argue that a debtor has the power to direct the application of a payment and if the creditor disregards instructions and applies the payment elsewhere, there has been a conversion. The rule upon which appellants rely may have application where the debtor owes more than one debt to the creditor, but that is not the case before us. Appellants owed but one debt to appellee. Appellee rejected the offer to renew the lease on the terms submitted. She could have returned the check to appellants with her letter of rejection, but she was not directed to do so in the offer. It is undisputed that appellants were indebted to her in the exact amount of the check. Appellee had not acquired the check through any wrongful act and was not breaching any direction given to her by

1. Section 72(2) of the Restatement provides:

"Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance. If circumstances indicate that the exercise of dominion is tortious the offeror may at his option treat it as an acceptance, though the offeree manifests an intention not to accept."

appellants as to what should be done with the funds in the event she rejected the offer. Whether appellee's conduct might be technically wrongful under some other theory of law we are not called upon to decide. We simply hold that under the circumstances of this case it was not tortious.

After the rejection of appellants' offer of August 31st, and in reply to a later letter from appellants, appellee did notify appellants that she would renew the lease on certain terms if acceptance was made by September 22nd. Appellants did not respond within the time limitation. On September 28th, after the offer had expired, appellants advised appellee that the terms were not acceptable and made another offer.

We agree with the lower courts. Worded as it was, the option to renew could not be enforced without a new agreement between the parties as to the terms and conditions of the renewal. Since no agreement was ever reached, there is nothing the courts can enforce.[2]

Appellants urge that a sales-purchase agreement between appellee's husband as seller and an undisclosed agent acting for appellants as purchasers, establishes their right to renew the lease in question at a rental of $325 per month. The sales agreement did purport to give such a right. However, we believe the evidence supports the lower court's finding that appellee's husband, in selling his blueprint business to appellants' agent, was acting solely in his own behalf and had no authority to bind appellee who owned the real property and buildings in her own right. The lease in question was negotiated by appellants' agent with appellee only; there is no evidence that appellants at any time seriously relied on any ostensible authority in appellee's husband.

The last question to be decided is whether certain changes made to the buildings by appellants without the permission of appellee were alterations. The lease provided that no alterations were to be made without the permission of the lessor or his agent, but lessee was given permission to redecorate the premises to suit his purposes provided he did not damage or make waste of the premises.

The district magistrate court found that the changes were alterations and awarded appellee $750 damages. The superior court affirmed.

The changes consisted of moving one entire wall in one of the buildings about six inches; changing a window into a doorway; constructing two separate archways to connect what had been two separate buildings; constructing staggered walls near doorways to serve as "light traps" and performing extensive plumbing and electrical wiring on the buildings.

The carpenter who performed the work testified that he would classify the changes as "architectural changes" as distinguished from "redecorations" and that it was necessary to cut through the outside walls to construct the arches. His testimony was that the buildings could be restored to their original condition for approximately $400. A contractor testified that according to his estimate it would cost $284 for materials and $721 for labor to restore the premises to their original state, and that removal of the partitions would involve some "constructural damage" to the building, and that the changes made by lessee were in the nature of an "architectural change".

The evidence supports the lower court's finding that the changes made were alterations instead of redecorations as claimed by appellants.

The judgment is affirmed.

2. Alaska Creamery Products, Inc. v. Wells, 373 P.2d 505 (Alaska 1962); Leider v. Schmidt, 260 Wis. 273, 50 N.W.2d 233 (1951); Ferrill v. Collins, 225 Ark. 247, 281 S.W.2d 939 (1955); but see Chaney v. Schneider, 92 Cal.App.2d 88, 206 P.2d 669 (1949) where lessor refused to discuss any terms for the renewal and to prevent a harsh result the court enforced an option to renew which was to be "at rentals and terms to be mutually agreed upon at that time".