[No. 62142-4-I.   Division One.   April 19, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. ROGER SINCLAIR
WRIGHT, *Appellant*.

538

540

*Richard A. Hansen* and *Ariella L. Wagonfeld* (of *Allen Hansen & Maybrown PS*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Stephen P. Hobbs, Deputy*, for respondent.

¶1 SCHINDLER, J. — In an unpublished opinion, we rejected Roger Sinclair Wright's argument that the trial court erred in denying his motion to suppress because the officer lacked justification to stop him for a traffic infraction or that the traffic stop was a pretext, and affirmed his convictions for possession of marijuana with intent to distribute and possession of methylenedioxymethamphetamine (MDMA a/k/a "Ecstasy").[1] Wright filed a motion to reconsider based on the recent United States Supreme Court decision in *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). Wright contends that the decision in *Gant* and the Washington State Supreme Court's recent decision in *State v. Patton*, 167 Wn.2d 379, 219 P.3d 651 (2009), compel a different result. We disagree. Unlike *Gant*, because the police arrested Wright for possession of marijuana and had reason to believe evidence of the crime might be found in the car, there is no violation of the Fourth Amendment. And unlike in *Patton*, because the police had probable cause to arrest Wright for possession of marijuana, and a nexus between Wright, the crime of the arrest, and the search of the vehicle, there is no violation of article I, section 7 of the Washington State Constitution. We deny Wright's motion to reconsider, and affirm.

## FACTS

¶2 Wright does not challenge the findings of fact as set forth in the trial court's order denying his motion to suppress.[2]

---

[1] By separate order, the unpublished opinion filed on April 27, 2009 is withdrawn.

[2] Unchallenged findings of fact are treated as verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

¶3 At approximately 4:45 p.m. on November 26, 2007, Officer Christopher Gregorio stopped Roger Sinclair Wright for driving without headlights after sunset. Before stopping the car, Officer Gregorio called for backup.

¶4 Officer Gregorio approached the car on the driver's side. Wright was the only occupant in the car. Officer Gregorio immediately smelled the "strong odor of marijuana" emanating from the car. Wright admitted that he did not "have on any lights and he was backing up around his dad's house illegally." Wright asked Officer Gregorio to give him a citation and let him go. Officer Gregorio said Wright appeared nervous and was physically shaking.

¶5 Officer Gregorio asked Wright twice for the vehicle registration. But each time Wright started to open the glove compartment, he retracted his hand. When Wright finally opened the glove compartment, Officer Gregorio saw a large roll of money. Wright quickly closed the glove compartment without retrieving the registration and appeared even more agitated and nervous. Officer Gregorio said Wright was "moving his hand uncontrollably, and his eyes started to well up with tears."

¶6 Officer Gregorio arrested Wright for possession of marijuana. The police handcuffed Wright and placed him in the patrol car. Wright gave the officers permission to retrieve the registration from the glove compartment. As Officer Gregorio leaned into the car to get the registration, he noticed the odor of marijuana was much stronger. After reading Wright his *Miranda*[3] rights, Officer Gregorio asked why he smelled marijuana in the car. In response, Wright admitted smoking marijuana earlier but refused to answer any more questions.[4]

¶7 Officer Gregorio requested the assistance of a K-9 drug unit with a drug-sniffing dog. After the dog alerted to

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] According to Officer Gregorio, "Alls he would tell me is he was smoking it. He asked why I was trying to stick it to him and put him in a bind. Again I asked him if there was any marijuana in the car, and he didn't say that he didn't want to answer any more questions, just stopped answering my questions."

the presence of drugs in the car, the police searched the car. The police recovered two Baggies of marijuana and a prescription bottle of oxycodone in the console of the passenger compartment, and two Baggies of marijuana and a scale in the back seat. The police later obtained a warrant to search the trunk of the car and found a large bag of marijuana, a small bag of marijuana, and a ziplock bag containing 250 pills of MDMA, a/k/a "Ecstasy."

¶8 The State charged Wright with possession of marijuana with intent to deliver and possession of MDMA with intent to deliver. Wright filed a CrR 3.6 motion to suppress the drugs and his statements to the police. Wright argued that Officer Gregorio was not justified in stopping him for driving without headlights. Alternatively, Wright argued that the stop was a pretext. Wright did not challenge the validity of the search incident to arrest.

¶9 Officer Gregorio was the only witness to testify at the CrR 3.6 hearing. The court denied Wright's motion to suppress. The court entered detailed findings of fact and conclusions of law. The court ruled that Officer Gregorio had reasonable suspicion to stop Wright for a traffic infraction and that based on the totality of the circumstances, the stop was not a pretext.

¶10 Wright waived his right to a jury trial. The court convicted Wright of possession of marijuana with intent to deliver and the lesser included offense of possession of MDMA.

¶11 On appeal, Wright argued that the trial court erred in denying his motion to suppress because the police officer lacked justification to stop the vehicle and, in the alternative, that the traffic stop was a pretext. In an unpublished opinion, we rejected Wright's arguments and affirmed.

¶12 Three days after the opinion was filed, Wright filed a motion to reconsider. Wright claimed that based on the Supreme Court's recent decision in *Gant*, the search of his car violated the Fourth Amendment. We requested additional briefing and scheduled oral argument on the motion

to reconsider. Wright argued for the first time in his reply brief that the search was also invalid under article I, section 7 of the Washington State Constitution. We asked the State to file a supplemental response to Wright's argument under article I, section 7. Before oral argument, the Washington State Supreme Court issued its decision in *Patton*, 167 Wn.2d 379, holding that in the absence of a nexus between the arrestee, the crime of arrest, and the vehicle, an automobile search incident to arrest violates article I, section 7 of the Washington State Constitution.[5]

*Automobile Search Incident to Arrest under the Fourth Amendment*

¶13 Wright asserts that under the United States Supreme Court's recent decision in *Gant*, the warrantless search of his automobile was invalid under the Fourth Amendment because he was handcuffed and secured in the back of the patrol car.[6] In *Gant*, the Supreme Court held that police can search a vehicle incident to arrest only if the arrestee is unsecured and within reaching distance of the passenger compartment or it is reasonable to believe evidence of the crime for which he was arrested is in the vehicle. *Gant*, 129 S. Ct. at 1719. The State contends the search was valid under *Gant* and the Fourth Amendment because the police had reason to believe evidence of the crime of the arrest might be found in the vehicle.

¶14 The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."

---

[5] We asked the parties to address the decision in *Patton* at oral argument.

[6] The State concedes that the Supreme Court's decision in *Gant* applies retroactively to this case. "[A] decision of [the Supreme Court] construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered." *United States v. Johnson*, 457 U.S. 537, 562, 102 S. Ct. 2579, 73 L. Ed. 2d 202 (1982); *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987) (The rule applies even to decisions constituting a "clear break" with past precedent having retroactive application.).

U.S. CONST. amend. IV. A warrantless search of an area in which the defendant has a privacy interest is per se unreasonable under the Fourth Amendment subject to "a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

¶15 In *Gant*, the Supreme Court rejected a broad interpretation of *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), and clarified the search incident to arrest exception to the Fourth Amendment as defined in *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), and as applied to vehicle searches in *Belton*. The Court held, "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 129 S. Ct. at 1723. Where these justifications are absent, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Gant*, 129 S. Ct. at 1723-24.

¶16 In *Chimel*, the Court held that the police can conduct a warrantless search of a home incident to an arrest, so long as the search is limited to the area within the arrestee's "immediate control," which is defined as "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel*, 395 U.S. at 763. The basis for this well-established exception to the warrant requirement is the need "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape" and the need to prevent the concealment or destruction of evidence. *Chimel*, 395 U.S. at 763.

¶17 In *Belton*, a state trooper stopped a car for traveling at an excessive speed. While asking the driver for his license and automobile registration, the trooper smelled burnt marijuana and saw an envelope on the floor of the car marked "Supergold," a name associated with marijuana.

*Belton*, 453 U.S. at 455-56. The trooper arrested all four occupants of the car for unlawful possession of marijuana. During the search of the car, the trooper found marijuana in the envelope marked "Supergold" and cocaine in the pocket of Belton's jacket, which was in the back seat of the car. The trial court denied Belton's motion to suppress the cocaine discovered in the search incident to arrest. *Belton*, 453 U.S. at 456. The Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and any other containers found inside the vehicle. *Belton*, 453 U.S. at 460 (footnote omitted).

¶18 In *Thornton v. United States*, 541 U.S. 615, 618, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004), the Court addressed the question of whether the *Belton* rule applies when the driver leaves the vehicle. In *Thornton*, before the police were able to pull over Thornton for driving a car with license tags that did not match the vehicle, he parked and got out of the car. When the police questioned Thornton,

> [he] appeared nervous. He began rambling and licking his lips; he was sweating. Concerned for his safety, Nichols asked petitioner if he had any narcotics or weapons on him or in his vehicle. Petitioner said no. Nichols then asked petitioner if he could pat him down, to which petitioner agreed. Nichols felt a bulge in petitioner's left front pocket and again asked him if he had any illegal narcotics on him. This time petitioner stated that he did, and he reached into his pocket and pulled out two individual bags, one containing three bags of marijuana and the other containing a large amount of crack cocaine.

*Thornton*, 541 U.S. at 618. The police arrested Thornton for possession of drugs and placed him in a patrol car prior to searching the car and finding a 9 mm handgun under the driver's seat. A jury convicted Thornton of possession of cocaine with intent to distribute and illegal possession of a firearm.

¶19 The Court held the *Belton* rule applied and the police were justified in searching the car incident to the

arrest. However, in a concurring opinion, Justice O'Connor expressed "dissatisfaction with the state of the law in this area [because] lower court decisions seem now to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than an exception justified by the twin rationales of *Chimel*. . . ." *Thornton*, 541 U.S. at 624 (O'Connor, J., concurring in part). In another concurring opinion, Justice Scalia suggested limiting a *Belton* search to cases where it is reasonable to believe evidence relevant to the crime of arrest might be "found in the vehicle." *Thornton*, 541 U.S. at 632 (Scalia, J., concurring in judgment).

¶20 In *Gant*, the Court rejected the long-accepted broad interpretation of the *Belton* rule because it "untether[ed] the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it 'in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.' " *Gant*, 129 S. Ct. at 1719 (quoting *Belton*, 453 U.S. at 460 n.3).

¶21 The Court held that because *Chimel* limited the scope of the search incident to arrest to the person and the area within his immediate control, the police may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 129 S. Ct. at 1719.

> The safety and evidentiary justifications underlying *Chimel*'s reaching-distance rule determine *Belton*'s scope. Accordingly, we hold that *Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle.

*Gant*, 129 S. Ct. at 1714. But the Court also held that the search of a vehicle incident to arrest is permissible when it is reasonable to believe evidence of the crime of arrest might be found in the vehicle.

> Although it does not follow from *Chimel,* we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Thornton,* 541 U.S., at 632, 124 S.Ct. 2127 (SCALIA, J., concurring in judgment). In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. See, *e.g., Atwater v.* [*City of*] Lago Vista, 532 U.S. 318, 324, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001); *Knowles v. Iowa,* 525 U.S. 113, 118, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). But in others, including *Belton* and *Thornton,* the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

*Gant,* 129 S. Ct. at 1719.

¶22 While the Court did not elaborate on the reasonable belief standard, the opinion makes clear it requires less than probable cause. *Gant,* 129 S. Ct. at 1721.[7] The Court in *Gant* also emphasized that a search incident to arrest is not the only exception to the warrant requirement, and its holding does not implicate other established exceptions. Those exceptions include situations where an officer has reasonable suspicion that an individual is dangerous "and may gain immediate control of weapons" in the car, *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983), and the recognized automobile exception under the Fourth Amendment that allows a warrantless search of an automobile for evidence relevant to both the offense of arrest and other offenses. *United States v. Ross,* 456 U.S. 798, 807-09, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982).

¶23 In *Gant,* the police arrested Gant on an outstanding warrant for driving with a suspended license. The police

---

[7] The reasonable belief standard is analogous to the "reasonable suspicion" standard required to justify a *Terry* search. *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *see Adams v. Williams,* 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972) (*Terry* search permissible if officer "has reason to believe that the suspect is armed and dangerous.").

handcuffed Gant and placed him in the back of a patrol car. In a search of the interior of the car, the police found a gun and a bag of cocaine. The Court held the search violated the Fourth Amendment. Because Gant was arrested for driving with a suspended license and was secured in a patrol car before officers searched his vehicle and found cocaine, the Court concluded that Gant clearly was not within reaching distance of the passenger compartment at the time of the search. *Gant*, 129 S. Ct. at 1719. The Court also concluded that an evidentiary basis for the search was lacking because "Gant was arrested for driving with a suspended license—an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." *Gant*, 129 S. Ct. at 1719. Thus, there was no reason to believe evidence of the crime of arrest might be found in the car. *Gant*, 129 S. Ct. at 1719.

¶24 Here, while Wright was initially stopped for a traffic violation, he was actually arrested for possession of marijuana, a drug offense. The arresting officer smelled the strong odor of marijuana emanating from the car, observed Wright's agitated and furtive behavior, and saw a large roll of money in the glove compartment. After waiving his *Miranda* rights, Wright admitted that he had smoked marijuana earlier. Because the unchallenged facts establish there was reason to believe the car contained evidence of the offense for which he was arrested, the search was justified under *Gant* and the Fourth Amendment.

*Automobile Search Incident to Arrest under Washington Constitution Article I, Section 7*

¶25 Wright also argues that based on the Washington State Supreme Court's recent decision in *Patton*, 167 Wn.2d 379, the warrantless search of his car violates article I, section 7 of the Washington State Constitution. Because the search incident to arrest was based on probable cause to arrest for possession of marijuana, Wright's reliance on article I, section 7 and *Patton* is misplaced.

¶26 Under article I, section 7, "No person shall be disturbed in his private affairs, or his home invaded,

without authority of law." WASH. CONST. art. I, § 7. Article I, section 7 provides greater protection of an individual's right to privacy than the Fourth Amendment. *State v. Ferrier*, 136 Wn.2d 103, 111, 960 P.2d 927 (1998). An individual's right to privacy encompasses automobiles and their contents. *State v. O'Neill*, 148 Wn.2d 564, 584, 62 P.3d 489 (2003). A warrantless search under article I, section 7 is invalid unless an established exception applies. *State v. Gocken*, 71 Wn. App. 267, 274, 857 P.2d 1074 (1993). The burden is on the State to show an exception to the warrant requirement applies. *State v. Grande*, 164 Wn.2d 135, 141, 187 P.3d 248 (2008); *State v. Rankin*, 151 Wn.2d 689, 699, 92 P.3d 202 (2004).

¶27 In *Patton*, the court addressed the justification and application of the search of an automobile incident to arrest exception to the warrant requirement as set forth in *State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983). The court also rejected the bright line rule adopted in *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986), that allowed officers to conduct a warrantless search incident to arrest of the passenger compartment of a vehicle. *Patton*, 167 Wn.2d at 391. The court held that under article I, section 7,

> the search incident to arrest exception requires a nexus between the arrestee, the vehicle, and the crime of arrest, implicating safety concerns or concern for the destruction of evidence of the crime of arrest. Because no such nexus existed here . . . we hold that the search of a vehicle incident to the arrest of a recent occupant is unlawful absent a reasonable basis to believe that the arrestee poses a safety risk or that the vehicle contains evidence of the crime of arrest that could be concealed or destroyed, and that these concerns exist at the time of the search. . . .

*Patton*, 167 Wn.2d at 384, 394-95.

¶28 In *Patton*, the police arrested Patton on an outstanding felony warrant while he was standing next to his car parked in his driveway. After handcuffing Patton and placing him in a patrol car, the police searched the car and found two bags of methamphetamine and $122 cash under

the driver's seat. The State charged Patton with possession of methamphetamine and resisting arrest. The trial court granted Patton's motion to suppress the evidence found in the car. The Court of Appeals reversed.

¶29 The Washington Supreme Court granted review to address whether the search incident to arrest exception applies to an automobile search where the arrestee is not "a driver or recent occupant of the vehicle, the basis for arrest is not related to the use of the vehicle, and the arrestee is physically detained and secured away from the vehicle before the search." *Patton*, 167 Wn.2d at 394.

¶30 The court rejected the bright line rule in *Stroud* and reaffirmed the justifications for the search of a vehicle incident to arrest as set forth in *Ringer*. *Patton*, 167 Wn.2d at 389-90. In *Ringer*, Ringer was arrested on an outstanding felony warrant. In a search incident to arrest, the police found drugs. *Ringer*, 100 Wn.2d at 692. In analyzing the validity of the warrantless search under article I, section 7, the court in *Ringer* focused on "its origins and to the law of search and seizure at the time our constitution was adopted." *Ringer*, 100 Wn.2d at 690. Under common law, law enforcement officers were allowed to make warrantless arrests for crimes "committed in their presence or where probable cause existed that a felony had been committed." *Ringer*, 100 Wn.2d at 691-92.

> At the time the state constitution was adopted, law enforcement officers were authorized to obtain warrants to make arrests and to search for evidence of certain criminal activity. Code of 1881, §§ 967-68, 1026. No statutory provisions authorized warrantless arrests; nevertheless, law enforcement officials were allowed at common law to make warrantless arrests for a misdemeanor or felony committed in their presence or where probable cause existed that a felony had been committed. It seems universally recognized that warrantless searches were allowed of the person of an arrestee when incident to lawful arrest. *See, e.g.*, *Weeks v. United States*, 232 U.S. 383, 392, 58 L. Ed. 652, 34 S. Ct. 341 (1914); *State ex rel. Murphy v. Brown*, 83 Wash. 100, 105-06, 145 P. 69 (1914); *Dillon v.*

*O'Brien*, 20 L.R. Ir. 300, 316-17 (Ex. D. 1887); *Leigh v. Cole*, 6 Cox Crim. L. Cas. 329, 332 (Oxford Cir. 1853).

*Ringer*, 100 Wn.2d at 691-92 (citation omitted). Based on the common law authorization to conduct a warrantless search incident to arrest only on the grounds of officer safety, or to avoid destruction of evidence of the crime of arrest, the court held the search of Ringer's van violated article I, section 7.

> Based on our understanding of Const. art. 1, § 7, we conclude that, when a lawful arrest is made, the arresting officer may search the person arrested and the area within his immediate control. *See State v. Michaels*, [60 Wn.2d 638, 374 P.2d 489 (1962)]. A warrantless search in this situation is permissible only to remove any weapons the arrestee might seek to use in order to resist arrest or effect an escape and to avoid destruction of evidence by the arrestee of the crime for which he or she is arrested.

*Ringer*, 100 Wn.2d at 699.

¶31 In interpreting article I, section 7 consistent with the common law, the *Ringer* court overruled a number of prior decisions that were inconsistent with the historical justifications for a search incident to arrest but cited with approval its decision in *Michaels*, 60 Wn.2d 638. In *Michaels*, the court held:

> [A]n officer may take into custody a person who commits a misdemeanor in his presence, and upon making the arrest, may search the person and his immediate environs *for evidence of the crime or tools which would aid in the arrested person's escape*.

*Michaels*, 60 Wn.2d at 642-43.

¶32 In addressing whether the police were authorized to search in *Patton*, the court concluded that the justifications to search a car incident to arrest did not apply because Patton was not a driver or recent occupant of the car, Patton

was secured in a patrol car, and there was no evidence of the crime of arrest or contraband in the car.[8]

> Thus, there was no basis to believe evidence relating to Patton's arrest would have been found in the car. Nor did Patton's brief proximity to the car give rise to safety concerns upon his arrest. At the time of the search, Patton was secured in the patrol car, some distance from his vehicle. Further, the record does not indicate that prior to the search there was any evidence of the crime of arrest or contraband in the car, as in *Stroud*.

*Patton*, 167 Wn.2d at 395.

¶33 Here, unlike in *Patton*, the unchallenged facts establish Officer Gregorio had probable cause to arrest Wright for possession of marijuana and there was a nexus between his arrest, the crime of arrest, and the search of the vehicle.

¶34 RCW 10.31.100 authorizes the police to arrest on probable cause to believe a person has committed a drug crime. RCW 10.31.100(1) provides, in pertinent part:

> Any police officer having probable cause to believe that a person has committed or is committing a misdemeanor or gross misdemeanor . . . involving the use or possession of cannabis . . . shall have the authority to arrest the person.

¶35 Long-standing case law also establishes that the police have probable cause to arrest the occupant of a vehicle for possession of a controlled substance "when a trained officer detects . . . the odor of a controlled substance" emanating from an individual in a vehicle and to search the passenger compartment of the car incident to that arrest. *State v. Huff*, 64 Wn. App. 641, 647, 826 P.2d 698 (1992); *State v. Marcum*, 149 Wn. App. 894, 912, 205 P.3d 969 (2009); *State v. Compton*, 13 Wn. App. 863, 864-65, 538 P.2d 861 (1975).

¶36 For example, in *Compton*, a police officer detected marijuana coming from a vehicle and frisked the lone

---

[8] The court in *Patton* expressly notes that the State did not argue there was probable cause to search the car. *Patton*, 167 Wn.2d at 386.

occupant, Compton, for weapons. After finding drugs on Compton, the officer then searched the passenger compartment. This court concluded that the odor of marijuana provided sufficient basis to believe that the crime of marijuana possession was being committed in the officer's presence. This in turn gave the officer probable cause to arrest and conduct a warrantless search of the vehicle incident to that arrest. *Compton*, 13 Wn. App. at 865-66.

¶37 Our Supreme Court recently reached the same conclusion in *Grande*. In *Grande*, the police officer smelled the odor of marijuana emanating from the car and arrested all of the occupants of the car for possession of marijuana. The court considered the question of "whether the moderate smell of marijuana emanating from a vehicle, without more, establishes probable cause to arrest all occupants of the vehicle and conduct a search incident to arrest." *Grande*, 164 Wn.2d at 138. The court concluded that based on the facts, there was insufficient individualized probable cause to support the arrest of each occupant because the officer lacked an evidentiary basis to clearly associate the crime with a particular individual. *Grande*, 164 Wn.2d at 143. Importantly, in stating that such an arrest would have been valid if the vehicle had not had more than one occupant, the court cited *Compton*, where there was probable cause to arrest, because "Compton was the only occupant in the vehicle where the smell was emanating." *Grande*, 164 Wn.2d at 144.

¶38 In discussing the interplay between probable cause for a warrantless arrest and probable cause to search, the *Grande* court states that under both the state and the federal constitutions, the validity of a warrantless search or seizure depends upon whether the probable cause standard is met, and that analysis is substantively the same under the Fourth Amendment and article I, section 7. *Grande*, 164 Wn.2d at 141. The court also recognized that "[a]n equivalent quantum of evidence is required whether the inquiry is one of probable cause to arrest or probable cause to search, although each requires somewhat different facts and cir-

cumstances." *Grande*, 164 Wn.2d at 142 (citing 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.1(b) (4th ed. 2004)).

¶39 While the court held that the police lacked individualized probable cause to arrest in *Grande*, the court explained:

> This does not mean, however, that a law enforcement officer must simply walk away from a vehicle from which the odor of marijuana emanates and in which more than one occupant is present if the officer cannot determine which occupant possessed or used the illegal drug. *In this case, because the officer had training and experience to identify the odor of marijuana and smelled this odor emanating from the vehicle, he had probable cause to search the vehicle. See generally* Andrea Levinson Ben-Yosef, Annotation, *Validity of Warrantless Search of Motor Vehicle Based on Odor of Marijuana-Federal Cases*, 188 A.L.R. FED. 487 (2003); Andrea Levinson Ben-Yosef, Annotation, *Validity of Warrantless Search of Motor Vehicle Based on Odor of Marijuana-State Cases*, 114 A.L.R.5TH 173 (2003).

*Grande*, 164 Wn.2d at 146.[9]

¶40 This case is more like *Compton* than *Patton*. In the typical automobile search involved in *Patton* and *Gant*, a search after a traffic stop leads to the fortuitous discovery of evidence of an unrelated crime. But in this case, the search focused from its inception on evidence of a crime the officer observed as soon as he stopped the car—marijuana possession. Because this was no fishing expedition in which the police thought they might discover evidence of some unrelated crime, the search was lawful and the police did not invade Wright's right to privacy.[10]

---

[9] (Emphasis added.) Courts in the majority of jurisdictions have concluded that odor of marijuana emanating from a vehicle establishes probable cause to conduct a search of that vehicle. *See* Ben-Yosef, 114 A.L.R.5TH 173.

[10] Because this search was performed based on probable cause to arrest and search for evidence of the crime of possession of marijuana, the officer had authority

¶41 Here, the unchallenged facts establish a clear nexus between Wright, the crime of the arrest, and the search of the car. Wright was the only occupant in the car. As soon as Wright opened the car window and the strong odor of marijuana wafted into the outside air, the officer had probable cause to arrest and search for evidence of the crime the officer knew Wright was committing. And after arresting Wright for possession of marijuana and advising Wright of his *Miranda* rights, Wright admitted smoking marijuana earlier.

¶42 Because the police had probable cause to arrest Wright for possession of marijuana and to search the car for evidence of the drug crime, the search of the passenger compartment of the car incident to arrest did not violate article I, section 7.[11]

## *Justification to Stop*

¶43 Wright also claims the trial court erred in ruling Officer Gregorio's decision to stop the car did not violate his constitutional rights. We review the trial court's findings of fact for substantial evidence and the conclusions of law de novo. *State v. Carter*, 151 Wn.2d 118, 125, 85 P.3d 887 (2004). The court decides issues of fact and makes credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We will not disturb credibility determinations on appeal. *Camarillo*, 115 Wn.2d at 71; *O'Neill*, 148 Wn.2d at 571. Where, as here, the findings of fact are not challenged, we review de novo whether the findings support the trial court's conclusions of law. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).

¶44 In general, a warrantless seizure violates both the state and the federal constitutions. *State v. Ladson*, 138 Wn.2d 343, 349-50, 979 P.2d 833 (1999). An investigatory detention under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct.

of law under article I, section 7. *State v. Valdez*, 167 Wn.2d 761, 224 P.3d 751 (2009).

[11] In a statement of additional authorities, Wright cites the Supreme Court's recent decision in *Valdez*. *Valdez* does not change our analysis in this case.

1868, 20 L. Ed. 2d 889 (1968) is an exception. *State v. Rife*, 133 Wn.2d 140, 150-51, 943 P.2d 266 (1997). To justify an investigative stop under the *Terry* exception, a police officer must have a reasonable suspicion based on specific and articulable objective facts that the person stopped has been or is about to be involved in a crime. *Terry*, 392 U.S. at 21-22. The reasonable suspicion standard is a lower standard than the probable cause standard. *Terry*, 392 U.S. at 25-26; *State v. Dorey*, 145 Wn. App. 423, 429, 186 P.3d 363 (2008). In evaluating the reasonableness of such a stop, a court must look to the totality of the circumstances known to the officer at the time of the stop. *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991).

¶45 Our courts have applied the *Terry* stop exception under the Fourth Amendment and article I, section 7 of the Washington State Constitution to stops incident to traffic infractions. *State v. Duncan*, 146 Wn.2d 166, 174-75, 43 P.3d 513 (2002). To be lawful, a traffic stop must be justified at its inception. *State v. Tijerina*, 61 Wn. App. 626, 628-29, 811 P.2d 241 (1991). Police may conduct a warrantless traffic stop if the officer has a reasonable and articulable suspicion that a traffic violation has occurred or is occurring. *Ladson*, 138 Wn.2d at 349.[12]

¶46 Because the sun had set less than 30 minutes before the stop, Wright argues Officer Gregorio did not have a valid basis to stop him under RCW 46.37.020.[13]

¶47 RCW 46.37.020 provides:

Every vehicle upon a highway within this state at any time from a half hour after sunset to a half hour before sunrise and at any other time when, due to insufficient light or unfavorable

---

[12] While Wright cites a number of recent decisions that clearly reaffirm that article I, section 7 of our state constitution provides greater protection than the Fourth Amendment, none of those cases stand for the proposition that police cannot legally stop a motor vehicle for a traffic infraction. *See State v. Day*, 161 Wn.2d 889, 895, 168 P.3d 1265 (2007) (acknowledging *Terry* rationale has been extended to traffic infractions).

[13] The sun set at 4:21 p.m. on November 29, 2006, 24 minutes before Wright's vehicle was stopped at approximately 4:45 p.m.

atmospheric conditions, persons and vehicles on the highway are not clearly discernable at a distance of one thousand feet ahead shall display lighted headlights, other lights, and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles, and such stop lights, turn signals, and other signaling devices shall be lighted as prescribed for the use of such devices.

¶48 Wright relies on RCW 46.37.020 in an attempt to negate the lawfulness of the traffic stop. However, the question is not whether Wright actually violated the traffic code but, rather, whether the facts and circumstances warranted the stop. The reasonableness of a stop under *Terry* requires only reasonable suspicion to believe Wright violated the traffic code. The undisputed evidence establishes that it was dark, the weather was cold and icy, and Wright was driving without his headlights on. Under these circumstances, it was reasonable for Officer Gregorio to believe Wright had committed a traffic infraction. Even Wright admitted that he thought he had been stopped because he did not have his headlights on. Given the totality of the circumstances, Officer Gregorio was justified in making the traffic stop under *Terry. See also Duncan*, 146 Wn.2d at 175.

*Pretext*

¶49 As an alternative argument, Wright contends that the traffic stop was a pretext for an unlawful search. A pretextual traffic stops occurs when an officer stops a vehicle not to enforce the traffic code, but to conduct an investigation unrelated to driving. *Ladson*, 138 Wn.2d at 349-51. Pretext stops "generally take the form of police stopping a driver for a minor traffic offense to investigate more serious violations—violations for which the officer does not have probable cause." *State v. Myers*, 117 Wn. App. 93, 94-95, 69 P.3d 367 (2003). A warrantless traffic stop based on pretext violates article I, section 7 of the Washington State Constitution because it does not fall within

any exception to the warrant requirement and therefore lacks the authority of law necessary to intrude upon a citizen's privacy interests. *Ladson*, 138 Wn.2d at 358.

¶50 In determining whether a stop is pretextual, the totality of the circumstances must be considered, including the subjective intent of the officer and the objective reasonableness of the officer's conduct. If the court finds the stop is pretextual, all evidence subsequently obtained from the stop must be suppressed. *Ladson*, 138 Wn.2d at 358-59.

¶51 Wright focuses on Officer Gregorio's possible motivation for initiating the traffic stop. Noting that Officer Gregorio called for backup due to a "suspicious vehicle stop" and his testimony that the area where the stop occurred was known for car prowls and vehicle thefts, Wright argues that the real reason for the stop was to investigate suspicious criminal conduct, not to enforce the traffic code. But "patrol officers whose suspicions have been aroused may still enforce the traffic code, so long as the enforcement of the traffic code is the actual reason for the stop." *State v. Minh Hoang*, 101 Wn. App. 732, 742, 6 P.3d 602 (2000). A stop is a pretext only "when an officer stops a vehicle in order to conduct a speculative criminal investigation unrelated to the driving, and not for the purpose of enforcing the traffic code." *State v. Nichols*, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007).

¶52 The undisputed facts establish that Officer Gregorio initiated the stop based on his observation that the car headlights were not turned on even though it was dark and icy. And unlike the cases cited by Wright, the undisputed facts show that Officer Gregorio had virtually no opportunity to form an ulterior motive for stopping the car.

¶53 Wright also claims that the reason for the stop was because he was a "young African American" driving a late model Lexus. But according to the undisputed facts, Officer Gregorio could not see inside the vehicle prior to initiating the stop. Substantial evidence supports the trial court's conclusion that Wright was stopped for having committed

an apparent traffic violation, and not for purposes of conducting an unrelated criminal investigation.

¶54 We affirm.

Cox and ELLINGTON, JJ., concur.

Review granted at 169 Wn.2d 1026 (2010).