[Nos. 84223-0; 84569-7.   En Banc.]
Argued May 19, 2011.     Decided April 5, 2012.

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL GERALD SNAPP, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. ROGER SINCLAIR WRIGHT, *Petitioner*.

178

*Mark E. Lindquist, Prosecuting Attorney for Pierce County*, and *Stephen D. Trinen, Deputy*; and *Daniel T. Satterberg, Prosecuting Attorney for King County*, and *Stephen P. Hobbs* and *James M. Whisman, Deputies*, for petitioner.

*Lila J. Silverstein* (of *Washington Appellate Project*), for respondent Snapp.

*Richard A. Hansen* and *Cooper D. Offenbecher* (of *Allen, Hansen & Maybrown PS*), for respondent Wright.

*Sheryl G. McCloud* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

*Seth A. Fine* and *Pamela B. Loginsky* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

*Douglas B. Klunder* on behalf of American Civil Liberties Union of Washington Foundation, amicus curiae.

¶1 MADSEN, C.J. — In *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), the United States Supreme Court held that a warrantless automobile search incident to arrest of a recent occupant of the vehicle is proper under the Fourth Amendment to the United States Constitution only (1) when the arrestee is unsecured and within reaching distance of the passenger compartment at

the time of the search or (2) when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle. The first of these exceptions to the warrant requirement mirrors the vehicle search-incident-to-arrest exception under article I, section 7 of the Washington State Constitution. *See State v. Patton*, 167 Wn.2d 379, 219 P.3d 651 (2009); *State v. Valdez*, 167 Wn.2d 761, 224 P.3d 751 (2009).

¶2 In the consolidated cases before us, the issue we must decide is whether an equivalent to *Gant*'s second exception, referred to here as the *Thornton*[1] exception, applies under article I, section 7 of the Washington State Constitution. We conclude that no such exception is permissible under article I, section 7. Accordingly, we reverse the Court of Appeals in both cases, reverse the defendants' convictions, and remand these cases for further proceedings consistent with our decision herein.

## FACTS

### *State v. Snapp*

¶3 On July 22, 2006, about 8:00 a.m., Trooper Keith Pigott saw a blue Ford Escort that was occupied by driver Daniel Snapp and passenger Angela Mae Wilcox. The trooper noticed two air fresheners hanging from the Escort's rearview mirror, which he believed blocked the driver's view. The trooper pulled his vehicle up next to the Escort and saw that the driver's seat belt appeared to be patched together with a blue carabiner. In his opinion, the carabiner was insufficient and the seat belt was defective.

¶4 Trooper Pigott dropped back behind the Escort, activated his emergency lights, and pulled the car over. As Mr. Snapp turned into a parking lot, Trooper Pigott saw Snapp lean forward and dip his right shoulder, as if he was placing something under the seat. Trooper Pigott called for backup.

---

[1] *Thornton v. United States*, 541 U.S. 615, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004).

¶5 When Pigott approached the driver's side of Snapp's car, Pigott told Snapp why he was stopped. Trooper Pigott asked what Snapp hid as he pulled into the parking lot and Mr. Snapp answered that he was reaching for a cigarette. The trooper asked for identification, registration, and proof of insurance. Mr. Snapp identified himself using a Department of Corrections (DOC) inmate card and said he did not have a driver's license.

¶6 Mr. Snapp quickly opened and closed the glovebox to retrieve the registration form. While the glovebox was open, Trooper Pigott believed he saw a "baggie" of what he suspected was methamphetamine. Trooper Pigott's observation of Mr. Snapp led him to believe that Snapp was under the influence of a stimulant.

¶7 Trooper Pigott asked Snapp if he had any weapons and Snapp produced a knife from his pants pocket. Pigott then asked Mr. Snapp to exit the car to perform sobriety tests, and Snapp agreed to perform the tests. Pigott concluded that while Snapp might be under the influence to some degree, he was not impaired to the level that would justify an arrest for driving while under the influence.

¶8 Pigott asked Snapp whether there was "meth" in the glovebox. Mr. Snapp said that there was no "meth" but there was a "meth" pipe in the car. The trooper handcuffed Snapp and placed him in the back of his patrol car. When she was asked what was in the car, Ms. Wilcox said that there was marijuana in her purse and that Snapp had hidden a meth pipe. Officer Pigott retrieved the meth pipe in the area where he had seen Mr. Snapp make the movement that Snapp described as reaching for a cigarette.

¶9 A records check revealed that Mr. Snapp had an outstanding no-bail arrest warrant for escape from the DOC and that Snapp's driver's license had been revoked. He was arrested on the warrant for driving while his license was revoked and for drug paraphernalia. Ms. Wilcox, who was arrested for possession of marijuana, was placed in the patrol car of Trooper Ames, called in as backup.

¶10 Trooper Pigott searched the Escort incident to Snapp's arrest. He found an accordion folder that contained papers and items with peoples' identities and a CD case that contained identification cards and credit cards, which Trooper Pigott concluded were evidence of identity theft. Snapp also had credit cards in his wallet that did not belong to him. Pigott noticed that the backseat of the car was folded down and he could see that there were a large number of items in the trunk. He stopped the search and had the car impounded. Later, a search warrant was obtained for the Escort's trunk.

¶11 On October 31, 2006, the State charged Mr. Snapp with 21 counts of second degree identity theft and 1 count of first degree identity theft. Snapp moved to suppress the evidence obtained during the warrantless search, arguing that both the stop and the search were unlawful. The trial court denied the motion. In its findings of fact resolving disputed facts, the trial court found that the trooper's description of the carabiner was credible and that Trooper Pigott had probable cause to stop the car and to arrest Snapp on the outstanding escape warrant, for driving while his license was suspended, and for the drug paraphernalia. The court concluded that the search of the vehicle was a valid search incident to arrest.

¶12 The State filed an amended information charging Snapp with six counts of second degree identity theft and Snapp entered an *Alford-Newton* plea,[2] pleading guilty to all six counts but with a reservation of his right to appeal the denial of his CrR 3.6 motion to suppress. He appealed and the Court of Appeals affirmed. The Court of Appeals held that Trooper Pigott lawfully arrested Snapp for use of drug paraphernalia and then searched the vehicle for evidence related to this crime of arrest. Therefore, the court concluded, under *Gant*'s *Thornton* exception the warrant-

---

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

less search was lawful. *State v. Snapp*, 153 Wn. App. 485, 219 P.3d 971 (2009).

¶13 Acting pro se, Snapp sought discretionary review by this court, arguing that under *Patton* and *Valdez* the search violated article I, section 7. We granted the petition for discretionary review and appointed counsel for Snapp.

## *State v. Wright*

¶14 On November 29, 2006, Seattle Police Officer Chris Gregorio was on routine patrol driving northbound on Waters Avenue South approaching the intersection with South Roxbury Street, in a neighborhood the officer described as a "hot spot" known for "burglaries and car prowls." Verbatim Report of Proceedings (VRP) at 7-8, 32-33. At 4:45 p.m., as he approached Roxbury, he saw a car one block away on a parallel street, 59th Avenue South, driving north and beginning to turn eastbound on Roxbury without headlights, though it was dark out. Although the vehicle began the turn heading toward the patrol car, it stopped about midturn, backed onto 59th Avenue South, and then turned and headed westbound on Roxbury, moving away from the patrol car.

¶15 Gregorio immediately pulled in behind the vehicle and stopped it because the driver was driving without headlights.[3] As he was making the stop, he asked that

---

[3] The officer testified that it was "seconds," not a "long period at all," between the time he saw the vehicle without its headlights on and the time he stopped it. VRP at 10. He testified that he would usually allow a driver time to turn the headlights on, and if the driver did not, then he would initiate a stop.

Mr. Wright claims that the officer "identified Mr. Wright as a 'black male' and contacted him on 'South Roxbury Street.' " Pet. for Discretionary Review, *State v. Wright*, No. 84569-7, at 3; *see also* Appellant's Opening Br. at 3 (same quotation, citing VRP at 7-8). The State correctly pointed out in its brief filed in the Court of Appeals that the reference to a "black male" came when Officer Gregorio identified the defendant in court (in response to a request to identify the defendant in the courtroom and an item of clothing he was wearing, the officer stated that "He is sitting at the table, black male, wearing a green shirt, button up shirt. [Report of Proceedings] at 7."). Br. of Resp't at 5 n.2. According to Officer Gregorio's testimony, at the time he saw the defendant's vehicle when he was

another officer also respond to the scene.[4] Officer Gregorio then approached Roger Wright, the sole occupant, and noticed a strong odor of marijuana coming from the vehicle.

¶16 Officer Gregorio asked Mr. Wright for his driver's license, registration, and proof of insurance and told him why he had stopped him. At some point in his conversation with Wright, Gregorio indicated that the area was a hot spot for stolen cars, burglaries, and vehicle prowls. The officer noticed that Wright was extremely nervous and reluctant to open the glove box and, when he did, Gregorio noticed a large roll of money.

¶17 Gregorio arrested Wright and passed him off to Officer Larned, the backup officer who had arrived on the scene shortly after Gregorio had initiated contact with Wright. Wright was placed in the back of a patrol car and read his *Miranda*[5] rights, which he waived. Officer Gregorio questioned Mr. Wright about the odor of marijuana in the car. Wright was reluctant to answer questions about marijuana but eventually admitted he had been smoking marijuana earlier. Officer Gregorio testified that all Wright would say was that he was smoking it. Realizing that the conversation was not going any further, Gregorio requested a K-9 unit.

¶18 When it arrived about 20 minutes later, a dog uncovered two baggies of marijuana, $1,300 in cash, and a prescription bottle of oxycodone in Wright's name in the vehicle. The dog then found two additional baggies of marijuana and a scale in the backseat. Based upon this search, Gregorio obtained a warrant for the vehicle and discovered a bag containing MDMA (methylenedioxymeth-amphetamine or ecstasy) in the trunk.

---

pulling onto Roxbury, he could not see the defendant inside the car, just the vehicle being driven without the headlights on.

[4] Officer Gregorio testified that, for officer safety, if he was pulling a vehicle over with three or four occupants he would usually ask for backup, if one was available. He also testified, as noted, that he could not see inside the vehicle.

[5] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶19 Wright was charged with possession of MDMA with intent to distribute and possession of marijuana with intent to distribute. He moved to suppress the evidence. Following a CrR 3.6 hearing, the trial court denied the motion in an oral ruling. Wright waived the right to a jury trial and agreed to trial on stipulated facts. The court found him guilty of the lesser included offense of possession of MDMA and guilty on the count of possession of marijuana with intent to distribute.

¶20 Mr. Wright appealed and the Court of Appeals affirmed. Wright then filed a motion for reconsideration in light of *Gant*, which was granted. This court then issued its decision in *Patton*. The Court of Appeals again affirmed based on its determination that probable cause existed to believe the vehicle contained evidence of the crime of arrest. *State v. Wright*, 155 Wn. App. 537, 230 P.3d 1063 (2010).

¶21 We granted Wright's petition for discretionary review. Additional facts regarding the traffic stop are addressed below in connection with Mr. Wright's contention that the stop was pretextual.

## ANALYSIS

¶22 The primary issue in both cases before us is whether the warrantless searches of the defendants' vehicles violated their right to privacy under article I, section 7 of the Washington Constitution. Article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." A privacy interest in vehicles and their contents is recognized under article I, section 7. *State v. Afana*, 169 Wn.2d 169, 176, 233 P.3d 879 (2010); *Patton*, 167 Wn.2d at 385.

¶23 The protections guaranteed by article I, section 7 are qualitatively different from those under the Fourth Amendment. *State v. Garcia-Salgado*, 170 Wn.2d 176, 183, 240 P.3d 153 (2010); *Valdez*, 167 Wn.2d at 772; *State v. McKinney*, 148 Wn.2d 20, 26, 60 P.3d 46 (2002). Warrant-

less searches are per se unreasonable under our state constitution, subject to a limited set of carefully drawn exceptions. *Garcia-Salgado*, 170 Wn.2d at 184; *State v. Tibbles*, 169 Wn.2d 364, 368-69, 236 P.3d 885 (2010); *State v. Ringer*, 100 Wn.2d 686, 701, 674 P.2d 1240 (1983), *overruled on other grounds by State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986) (plurality opinion). The State bears the burden of establishing that an exception to the warrant requirement applies. *State v. Kirwin*, 165 Wn.2d 818, 203 P.3d 1044 (2009); *State v. Vrieling*, 144 Wn.2d 489, 494, 28 P.3d 762 (2001).

¶24 The exception at issue here is the search incident to arrest, and more specifically, the search of a vehicle incident to arrest. We recently adjusted our article I, section 7 analysis for a warrantless search of a vehicle incident to arrest of a recent occupant to bring the exception into conformance with the rationale underlying the exception, just as the United States Supreme Court did in *Gant* with regard to the Fourth Amendment.[6]

¶25 In the Fourth Amendment context, *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), had been "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there was no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant*, 556 U.S. at 341. In *Gant*, the Court explained that *Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle. *Id.* at 335. The Court explained that to read *Belton* as it had been widely read would "untether the [vehicle search-incident-to-arrest] rule from the justifications underlying the . . . exception." *Id.* at 343.

¶26 Those justifications, set out in *Chimel v. California*, 395 U.S. 752, 762-63, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969),

---

[6] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

are to find and remove weapons that the arrestee might use to resist arrest or effect an escape and to find and seize any evidence the arrestee might conceal or destroy—thus the arrestee's person and the area into which an arrestee might reach may be searched incident to arrest. In returning to these justifications, the Court held in *Gant* that "the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 556 U.S. at 343. The Court acknowledged that as construed, the exception has limited application because when an officer makes an arrest, any remaining real possibility of access to weapons and evidence will be rare.

¶27 Similarly, under article I, section 7, upon reexamining the issue, we held that "the search of a vehicle incident to the arrest of a recent occupant is unlawful absent a reasonable basis to believe that the arrestee poses a safety risk or that the vehicle contains evidence of the crime of arrest that could be concealed or destroyed, and that these concerns exist at the time of the search." *Patton*, 167 Wn.2d at 394-95. We disapproved expansive application of the search-incident-to-arrest exception to the period of time after the arrestee is secured and attendant risks to officers have passed. In *Patton*, the vehicle search-incident-to-arrest exception did not apply because there was no connection between the suspect, the reason for the arrest, and the vehicle, and therefore the search was not *incident* to an *arrest. Id.* at 395.

¶28 In *Valdez*, 167 Wn.2d at 777, we expressly held, under circumstances directly raising the issue, that "after an arrestee is secured and removed from the automobile, he or she poses no risk of obtaining a weapon or concealing or destroying evidence of the crime of arrest located in the automobile, and thus the arrestee's presence does not justify a warrantless search under the search incident to arrest exception." Accordingly, we overruled *Stroud*, 106 Wn.2d at 152, where an eight member major-

ity of the court had "broadened the circumstances under which the exception was applicable" to include the time immediately after the arrest when the arrestee is secured in a patrol car. *Valdez*, 167 Wn.2d at 777; *see Stroud*, 106 Wn.2d at 152 (lead opinion); *see id.* at 175 (Durham, J., concurring) (the fact that the arrestees are in custody in the backseat of a patrol car at the time of a search incident to arrest is "immaterial").[7] *Stroud* was overruled on this point because its pragmatic approach did not accord with article I, section 7 and, indeed, permitted the vehicle search-incident-to-arrest exception to apply unmoored from its justifications. An arrestee in handcuffs in the backseat of a patrol car is hardly in a position to grab a weapon or gain possession of evidence of the crime in the vehicle and conceal or destroy it.

¶29 Thus, both under a Fourth Amendment analysis and pursuant to an article I, section 7 independent state constitutional analysis, a warrantless vehicle search incident to arrest is authorized when the arrestee would be able to obtain a weapon from the vehicle or reach evidence of the crime of arrest to conceal or destroy it. *Gant*, 556 U.S. at 343; *Valdez*, 167 Wn.2d at 777; *see Patton*, 167 Wn.2d at 394-95.

¶30 As mentioned at the outset of this opinion, the Court in *Gant* identified a second form of vehicle search incident to arrest. The Court held that "[a]lthough it does not follow from *Chimel*, . . . circumstances unique to the automobile context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gant*, 556 U.S. at 343 (quoting *Thornton*, 541 U.S. at 632 (Scalia, J., concurring)).

---

[7] *Stroud* primarily concerned the scope of the vehicle search-incident-to-arrest exception insofar as it concerned locked containers in the vehicle.

¶31 The specific issue raised in the present consolidated cases is whether the *Thornton* form of the exception will apply under article I, section 7. We conclude that it does not.

¶32 First, the underpinnings of the *Thornton* version of the exception do not justify its existence under article I, section 7. The Court in *Gant* adopted the *Thornton* exception given "circumstances unique to the vehicle context." *Id.* at 332. Justice Scalia's concurrence in *Thornton* indicates that these circumstances are the mobility of a vehicle and a lower expectation of privacy in a vehicle. *Thornton*, 541 U.S. at 631 (Scalia, J., concurring); *see Buena Valdez*, 167 Wn.2d at 771 (explaining that the *Thornton* "search is justified under the Fourth Amendment because there is a reduced expectation of privacy in an automobile and that expectation is outweighed by law enforcement needs heightened by the difficulties arising from an automobile's mobility" (citing *Thornton*, 541 U.S. at 631 (Scalia, J., concurring))); *see also United States v. Arriaza*, 641 F. Supp. 2d 526, 535 (E.D. Va. 2009) (explaining that same considerations as underpin the automobile exception likely underpin the *Thornton* exception).

¶33 These circumstances are the same factors that justify a search of a vehicle when there is probable cause to believe it contains evidence of criminal activity, the so-called "automobile exception" to the warrant requirement recognized under the federal constitution. The automobile exception allows for a warrantless search of a mobile vehicle when "there is probable cause to believe [the] vehicle contains evidence of criminal activity." *Gant*, 556 U.S. at 347 (citing *United States v. Ross*, 456 U.S. 798, 820-21, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982)); *see California v. Carney*, 471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985) (automobile exception justified based on lower expectation of privacy in a vehicle); *Carroll v. United States*, 267 U.S. 132, 153-54, 45 S. Ct. 280, 69 L. Ed. 543 (1925) (warrantless automobile search supported by probable cause of a crime is lawful due to the mobility inherent in an automobile).

¶34 However, although the automobile exception is recognized for purposes of the Fourth Amendment, it is not recognized under article I, section 7. *See Patton*, 167 Wn.2d at 386 n.4; *Tibbles*, 169 Wn.2d at 369 (in context of automobile search where suspect was not arrested; probable cause to search did not justify search of vehicle—"the existence of probable cause, standing alone, does not justify a *warrantless* search"); *Ringer*, 100 Wn.2d at 700-01. Although the *Thornton* exception is consistent with the rationale underlying the federal automobile exception under the Fourth Amendment, it lacks similar support under article I, section 7.[8]

¶35 Nonetheless, the State in both cases urges that a long line of existing Washington cases supports the *Thornton* exception or a variant of it. In *Wright*, for example, the State contends in its brief that the rule in Washington is that upon an arrest, police "may search the person and his immediate environs for evidence of the crime or tools which would aid in the arrested person's escape." *State v. Michaels*, 60 Wn.2d 638, 642-43, 374 P.2d 989 (1962) (emphasis omitted). According to the State, this rule was approved in *Ringer*, 100 Wn.2d at 700.

¶36 But *Ringer* in fact overruled the line of cases on which the State relies. *Ringer* held that during a search incident to the arrest of a vehicle's driver, an officer may

---

[8] Mr. Snapp's contention that the *Thornton* exception should not apply under article I, section 7 is based on a different understanding of its foundation. He points out that in *Thornton* Justice Scalia also expressed the opinion that if the Court was going to continue to rely on *Belton* searches, it should do so on the ground of returning to the broader sort of search incident to arrest that had been allowed prior to *Chimel*, positing that the real reason for *Belton*'s holding was the "more general . . . evidence-gathering search" upheld in *"United States v. Rabinowitz*, 339 U.S. 56, 70 S. Ct. 430, 94 L. Ed. 653 (1950)." *Thornton*, 541 U.S. at 629 (Scalia, J., concurring).

However, *Rabinowitz* was expressly overruled on this point in *Chimel*. Also, as mentioned, the Court in *Gant* explained that *Belton* had been misapplied and returned *Chimel*'s vehicle search-incident-to-arrest exception to its origins. It thus seems unlikely that when adopting the *Thornton* exception, the Court intended to justify it on the "general evidence-gathering search" analysis that was expressly overruled in *Chimel*.

search the arrestee and the area within his or her immediate control to remove any weapons the person might try to use to escape or resist arrest and to avoid destruction of evidence of the crime for which the person is arrested. *Id.* When referring to *Michaels*, the court added that in *Michaels* "[n]o attempt was made, however, to explain the precise scope of the limitation of the search to the person of the arrestee 'and his immediate environs'." *Id.* at 697. *Ringer* did not approve the rule that the State relies upon.

¶37 *Ringer*'s continuing validity on the vehicle search incident to arrest has recently been confirmed and its rule reaffirmed in *Patton* and *Valdez*. Although *Ringer* was overruled by *Stroud*, but in retrospect only temporarily, it was overruled only insofar as the scope of this rule is concerned because, as explained, in *Stroud* a majority of the court held the search could be made immediately after the arrest while the arrestee was secured in the backseat of a patrol car. However, *Stroud* did not alter this exception to the warrant *or* its justifications, but rather engaged in the fiction that the justifications were served immediately after the suspect was secured away from the vehicle. On this point, as noted, *Stroud* has been overruled. *Ringer*'s holding that the vehicle search incident to arrest is based on the dual concerns of officer safety and preservation of evidence stands as valid law, and prior cases that rested on other justifications not involving these concerns are not controlling precedent.

¶38 But the State in *Wright* and amicus curiae Washington Association of Prosecuting Attorneys argue that *Ringer* was not given new life by *Patton* and *Valdez* because these two decisions do not involve searches for evidence of the crime of arrest.[9] We disagree. In both cases we held that

---

[9] Also, as to whether a warrantless search of a vehicle for evidence of the crime of arrest is lawful under article I, section 7, the State would have us engage in a *Gunwall* analysis to determine the merits of the claims in this case. *See State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). Whatever may have been the

*Ringer* sets forth the relevant law, and in *Valdez* in particular, the scope of the vehicle search incident to arrest was at issue. Both cases explain that the search-incident-to-arrest exception had been expanded far beyond its common law origins, specifically citing the cases that the State and amicus urge the court to reinstate as precedent. *Valdez*, 167 Wn.2d at 773-77; *Ringer*, 100 Wn.2d at 690-99. In *Valdez*, we found it was necessary to overrule *Stroud* and return to the rule set out in *Ringer*. In this way, we returned to the common law origins of the search incident to arrest without a warrant and its dual justifications of officer safety and preservation of evidence.

¶39 As we have so frequently explained, article I, section 7 is not grounded in notions of reasonableness. Rather, it prohibits any disturbance of an individual's private affairs without authority of law. *See Valdez*, 167 Wn.2d at 773. Recognized exceptions to the warrant constitute authority of law justifying a search in the absence of a warrant, but only as carefully drawn and narrowly applied. In *Patton* and *Valdez* we explored at some length the nature and extent of the search-incident-to-arrest exception and concluded that its scope is delimited by its justifications. Indeed, the reason why the line of cases urged by the State and amicus has been rejected is because the cases do not conform to the constitutional underpinnings justifying the exception.

¶40 Thus, while it is true that neither *Patton* nor *Valdez* involved a search for evidence of the crime of arrest, as the State argues, the scope of the vehicle search incident to arrest was at issue in both. At a fundamental level, the scope of the exception itself does not vary based upon the facts.

---

situation when *Ringer* and later *Gunwall* were decided, it is now settled that a *Gunwall* analysis is unnecessary under article I, section 7 to determine whether it should be given independent effect. *State v. Athan*, 160 Wn.2d 354, 365, 158 P.3d 27 (2007); *McKinney*, 148 Wn.2d at 29. Rather, the only relevant question is what protection is provided in a particular context. *Athan*, 160 Wn.2d at 365; *McKinney*, 148 Wn.2d at 26-27.

¶41 We also reject the State's proposal made at oral argument that a modified form of the *Thornton* exception, so to speak, be applied. The State proposed a vehicle search-incident-to-arrest exception that would permit a warrantless search based on probable cause to believe that evidence of the crime of arrest might be found in the vehicle, rather than a reasonable belief as stated in *Gant*.[10,11] As we said in *Valdez*, "[W]hen a search can be delayed to obtain a warrant without running afoul of" concerns for the safety of the officer or to preserve evidence of the crime of arrest from concealment or destruction by the arrestee "(and does not fall within another applicable exception), the warrant *must be obtained*. A warrantless search of an automobile is permissible under the search incident to arrest exception when that search is necessary to preserve officer safety or prevent destruction or concealment of evidence of the crime of arrest." *Id.* at 777 (emphasis added). We emphasized that "time is of the essence" because in "some circumstances, a delay to obtain a search warrant might be shown to provide the opportunity for the arrestee to procure a weapon or destroy evidence of the crime." *Id.* at 773 (emphasis added).

¶42 Contrary to the urgency attending the search incident to arrest to preserve officer safety and prevent de-

---

[10] We note that in *Snapp* the Court of Appeals applied the *Thornton* exception as it was stated in *Gant*. In *Wright*, however, the Court of Appeals engaged in a somewhat different analysis. The court determined that Wright was arrested for possession of marijuana. *Wright*, 155 Wn. App. at 542, 553. The court applied *Patton* and concluded that when Wright was arrested there was a clear nexus between him, the crime of arrest for possession of the drug, and the vehicle. *Id.* at 546. The court also said that under *State v. Grande*, 164 Wn.2d 135, 146, 187 P.3d 248 (2008), probable cause to search a vehicle arises when an officer with training and experience to identify the odor of marijuana smells this odor coming from a vehicle. The Court of Appeals said that because the police had probable cause to arrest Wright for possession of marijuana and to search the car for evidence of this drug crime, the search of the passenger compartment was constitutional under article I, section 7.

[11] We recently rejected the idea that the existence of probable cause, alone, can justify a warrantless search of a vehicle. *Tibbles*, 169 Wn.2d at 369. While probable cause is a necessary condition for obtaining a warrant, it does not itself justify a search. *Id.*

struction or concealment of evidence, there is no similar necessity associated with a warrantless search based upon either a reasonable belief or probable cause to believe that evidence of the crime of arrest is in the vehicle.

¶43 The State in *Wright* also maintains, however, that *Ringer* has proved to be ineffective and counterproductive. Essentially, the State maintains that adhering to the exception as described in *Ringer* and confirmed in *Patton* and *Valdez* is too difficult and onerous. The authority of law to search under article I, section 7 is not simply a matter of pragmatism and convenience.

¶44 In *Snapp*, the State presents a somewhat confusing argument.[12] The State maintains that exigent circumstances, such as the potential destruction of evidence, can provide a justification for a warrantless search regardless of whether an arrest has been effected. This is true; in *Patton*, for example, the court observed that although the risk of destruction of evidence and officer safety are described as exigencies justifying the search-incident-to-arrest exception, the search-incident-to-arrest exception should be distinguished from the "exigent circumstances exception to the warrant requirement." *Patton*, 167 Wn.2d at 386 n.5. But the exigent circumstances exception to the warrant requirement is not at issue in these cases.[13] The State also explains that the search incident to arrest is "its

---

[12] This may be in part because it is fairly apparent that some of the State's briefing was borrowed from a different case. For example, the brief refers to arguments about entry into "Gibson's car" and the "fact that Gibson was arrested on a warrant for an unknown charge." Suppl. Br. of Resp't at 6-7. It is unknown who Gibson is and the references are obviously not to Snapp's case or his argument.

[13] We emphasize that our decision in this case involves only the search-incident-to-arrest exception to the warrant requirement. In a particular case and depending upon the situation, another basis for a warrantless search might exist such as under the community caretaking exception or the exigent circumstances exception that applies when delay in obtaining a warrant would compromise officer safety, aid an escape, or allow evidence to be destroyed. A search might also occur without a warrant when a vehicle is lawfully impounded. Our holding in the present case does not affect the application or availability of these or any other recognized exceptions to the warrant requirement under article I, section 7.

own exception" to the warrant requirement. Again, this is true.

¶45 The State in *Snapp* then proceeds to urge the same line of state cases permitting searches incident to arrest in the absence of any exigencies as are urged in *Wright*. The State's argument here seems to be that in these cases this state has already adopted the same rule that the United States Supreme Court adopted from Justice Scalia's dissent in *Thornton*. But as explained, these cases were overruled by *Ringer* because they had "allowed the scope of the search incident to arrest exception to . . . exceed by far any historical justification or precedent." *Ringer*, 100 Wn.2d at 695-96 (addressing several cases including *State v. Deitz*, 136 Wash. 228, 239 P. 386 (1925), *overruled by Ringer*, 100 Wn.2d at 699 and *State v. Cyr*, 40 Wn.2d 840, 246 P.2d 480 (1952), *overruled by Ringer*, 100 Wn.2d at 699).

¶46 We hold that the *Thornton* exception does not apply under article I, section 7. We also reject the proposed modified version of this exception that is based upon probable cause to believe evidence of the crime of arrest might be found in the vehicle. Accordingly, we reverse the Court of Appeals in both *Snapp* and *Wright* because the vehicle searches exceeded that which is permitted under *Ringer* and *Valdez*.

¶47 We next turn to additional issues raised by Mr. Wright. Mr. Wright first claims that Officer Gregorio did not have either probable cause or a reasonable suspicion justifying the stop of his vehicle. Insofar as he contends that probable cause is necessary, it is the wrong standard. A valid *Terry* investigative stop is permissible if the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *see State v. Doughty*, 170 Wn.2d 57, 62, 239 P.3d 573 (2010) ("[a] *Terry* stop requires a well-founded suspicion that the defendant engaged in criminal conduct"). A reasonable, articulable sus-

picion means that there "is a substantial possibility that criminal conduct has occurred or is about to occur." *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). *Terry's* rationale applies to traffic infractions. *State v. Johnson*, 128 Wn.2d 431, 454, 909 P.2d 293 (1996). In reviewing the propriety of a *Terry* stop, a court evaluates the totality of the circumstances. *Doughty*, 170 Wn.2d at 62; *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991).

¶48 Wright believes that because RCW 46.37-.020 provides that headlights must be on beginning one-half hour after sunset, and he was stopped 24 minutes after sunset, Officer Gregorio did not have lawful grounds for stopping him.[14] But as the Court of Appeals determined, the question of a valid stop does not depend upon Wright's actually having violated the statute. Rather, if Gregorio had a reasonable suspicion that he was violating the statute, the stop was justified.

¶49 Officer Gregorio testified that it was dark, cold, and icy when he saw Wright's car, and Wright does not dispute that it was dark when he was stopped. The vehicle openly turned and drove away from Gregorio with the headlights still off.

¶50 We conclude that Officer Gregorio could rationally believe that a traffic infraction was being committed. It was very near the time when headlights were required to be turned on regardless of conditions. It was dark, cold, and icy, and therefore reasonable for Gregorio to believe that Wright should have had his headlights on without actually knowing the exact time of sunset and then mentally adding 30 minutes. As mentioned, an actual violation is not necessary for a valid stop. Moreover, the headlight statute also provides that headlights must be on "at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of one thousand feet ahead." RCW 46.37.020.

---

[14] The trial court took judicial notice of the fact that the sun set at 4:21 p.m.

¶51 We affirm the Court of Appeals' determination that Officer Gregorio was justified in stopping Mr. Wright's vehicle on suspicion that a traffic infraction was being committed.

¶52 Mr. Wright next contends, however, that the traffic stop was a pretext for an unlawful search. The trial court found no pretextual stop, reasoning that Officer Gregorio saw the infraction and immediately initiated a traffic stop; there was no indication he was acting outside his routine patrol duties or that he handled the stop any differently from others; and given the nearly simultaneous timing of his observation of the vehicle, his observation of the infraction, and his initiation of the stop, there was no time to develop a motive to conduct a criminal investigation and cover it up with a false reason.

¶53 An officer may not use a traffic infraction as a pretext to stop a citizen and search for evidence of criminal wrongdoing that is unrelated to the reason for the stop. *State v. Ladson*, 138 Wn.2d 343, 357-58, 979 P.2d 833 (1999). The officer's motivation in making the stop must be the traffic infraction, not a desire to arrest the driver and search for evidence. Police officers may enforce the traffic code, so long as they do not use the authority to do so as a pretext to conduct an unrelated criminal investigation. In determining whether a stop is pretextual, the court considers the totality of the circumstances, including both the subjective intent of the officer and the objective reasonableness of the officer's behavior. *Id.*

¶54 First, Wright seems to suggest that Officer Gregorio knew at the time he stopped the car that it was too soon for headlights to be required. As explained, however, it was reasonable for Gregorio to stop the vehicle for a traffic infraction of driving without headlights. There is no question that at the suppression hearing Officer Gregorio knew that the stop occurred 24 minutes after sunset. But the issue of pretext concerns the time of the stop, not later acknowledgement that, in fact, there were still 6 minutes to go until one-half hour after sunset.

¶55 Wright maintains that Gregorio identified him as a black male driving a late model car. However, as explained above in footnote 3, the reference to a black male came in the course of identifying Wright in court. Officer Gregorio testified that he could not see the driver of the vehicle but could see only the vehicle without lights. Gregorio testified that he routinely stopped vehicles with headlights off, and he was on routine patrol at the time of the stop.

¶56 Wright points out, however, that Officer Gregorio identified the area as a "hot spot" known for burglaries and car prowls. He also says that although he was alone in the vehicle, Gregorio called for backup.

¶57 The State explains, however, that the fact that Gregorio was aware that the area was known for burglaries and vehicle prowls should not convert a stop into a pretext because an officer should not be expected to be unaware of such circumstances in the area in which he patrols. Further, the State says that Officer Gregorio was justified in calling for backup because he had decided to stop a vehicle with an unknown number of occupants (since he could not see inside the vehicle), the vehicle drove away from the officer when the patrol car came into view, and the area was known for criminal activity.

¶58 Wright next says that Officer Larned, the backup officer, wrote in his report that he was summoned because of "a suspicious vehicle stop," reporting nothing about headlights that were not on. According to Officer Larned's testimony, a suspicious vehicle stop would mean instances like a vehicle sitting in an area for an undetermined amount of time, people sitting in the vehicle in high drug and high crime areas, or driving slowly through areas in a blacked out vehicle. Larned also wrote in his report that he responded as a backup on both a traffic infraction and a suspicious vehicle stop.

¶59 Wright notes that the first reason that Larned listed for the stop in the affidavit of probable cause that Larned prepared was that the area was a hot spot for car prowls.

This is not irrelevant, and it could help support a conclusion that a pretextual stop occurred, depending on other evidence. But it was Officer Gregorio who saw the vehicle without lights, who watched it appear to abruptly change direction when the patrol car appeared, and who almost immediately stopped it, not Officer Larned.

¶60 Mr. Wright says that when Officer Gregorio approached him the officer said he pulled him over because he thought he was in a stolen car. Officer Gregorio testified, however, that he had not told Wright that he stopped him because he believed the vehicle was stolen, but that during the conversation with Mr. Wright he had indicated that the area was a hot spot for stolen cars, burglaries, and car prowls.

¶61 The evidence supports the trial court's determination that the stop was not pretextual. Officer Gregorio first saw the vehicle when he noticed it without headlights on. He promptly pulled toward the vehicle, whereupon it turned around and drove away. The officer did not follow it to see if he could observe an infraction occurring but instead stopped it within seconds. Under these circumstances, we affirm the Court of Appeals' holding that the stop was not pretextual.

## CONCLUSION

¶62 We hold that the second version of the vehicle search-incident-to-arrest exception recognized by the United States Supreme Court in *Gant*, which we have identified as the *Thornton* exception, does not apply under article I, section 7. We also conclude that a variation of this exception, requiring probable cause to believe that evidence of the crime of arrest might be found in the vehicle rather than a reasonable belief that such evidence might be found, is also not a valid form of the vehicle search incident to the arrest of a recent occupant because neither of the justifications for this exception to the warrant requirement justify

such an exception. Accordingly, we reverse the Court of Appeals in both cases and remand them for further proceedings consistent with our decision.

¶63 In *Wright*, however, we affirm the Court of Appeals' determinations that the traffic stop was justified and was not pretextual.

¶64 Accordingly, we reverse the Court of Appeals in both cases, reverse the defendants' convictions, and remand these cases for further proceedings consistent with our decision herein.

C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, STEPHENS, and WIGGINS, JJ., and ALEXANDER, J. PRO TEM., concur.

¶65 J.M. JOHNSON, J. (dissenting) — Article I, section 7 of the Washington State Constitution affords greater protection for private affairs than does the Fourth Amendment to the United States Constitution, which protects against only "unreasonable searches." However, the majority overstates such heightened protection in the context of lawful arrests. A probable cause standard allowing officers to search for evidence relevant to the crime of arrest is constitutionally permissible. This requirement is derivative of the long-standing search incident to arrest exception in this court's decisions under article I, section 7 of our constitution.

¶66 The officers in both *State v. Snapp* and *State v. Wright*[15] had probable cause to believe evidence relevant to the crime of arrest might be found in the respective vehicles. Daniel Snapp made a voluntary and noncustodial admission that there was a "meth" pipe in the car. Strong evidence indicated to Officer Gregorio that marijuana would be found in Roger Wright's car. Officer Gregorio could smell a strong odor of marijuana coming from the

---

[15] These cases were consolidated for review in this court. *State v. Snapp*, 153 Wn. App. 485, 219 P.3d 971 (2009); *State v. Wright*, 155 Wn. App. 537, 230 P.3d 1063 (2010).

vehicle, noticed a large roll of money in plain view, and obtained a voluntary admission from Wright, after *Miranda*[16] rights had been waived, that Wright had been smoking marijuana. Thus, I would affirm the Court of Appeals and the convictions in both cases and respectfully dissent.

## A. Legal Standard

¶67 This court's case law in the area of search of automobiles incident to arrest has been characterized by a number of changes in direction. The court nearly a century ago held that "a peace officer, when he makes a lawful arrest, may lawfully, without a search warrant, search the person arrested and take from him any evidence tending to prove the crime with which he is charged." *State v. Hughlett*, 124 Wash. 366, 370, 214 P. 841 (1923) (dealing with search of an automobile), *overruled* (50 years later) *by State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983).

¶68 We also extended this assertion to include the person's grip or suitcase and the interior compartment of the automobile. *Id.* This holding recognized that "the person arrested has the immediate physical possession, not only of the grips or suit cases which he is carrying, but also of the automobile which he is driving and of which he has control." *Id.* Rather than relying on the mobility of the vehicle as had United States Supreme Court cases creating a lower expectation of privacy, *e.g.*, *Arizona v. Gant*, 556 U.S. 332, 343, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009); *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004) (Scalia, J., concurring), this statement of law was a logical consequence of the recognized search incident to arrest exception.

¶69 This court then reversed *Hughlett* in *Ringer*, 100 Wn.2d 686. The *Ringer* majority held that "[a] warrantless search [after a lawful arrest is made] is permissible only to

---

[16] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

remove any weapons the arrestee might seek to use in order to resist arrest or effect an escape and to avoid destruction of evidence by the arrestee of the crime for which he or she is arrested." *Id.* at 699.

¶70 Three years later, the court changed direction again in *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986), which overruled *Ringer* and held that "officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence." *Id.* at 152. The period for which the passenger compartment could be searched included "the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car." *Id.* A limitation was that officers could not search a locked container or locked glove compartment without obtaining a warrant. *Id.*

¶71 After *Gant*, the court reversed course yet again in *State v. Valdez*, 167 Wn.2d 761, 224 P.3d 751 (2009), which overruled *Stroud* and returned to a rule similar to that in *Ringer*. *See id.* at 777. The court recognized, however, that "[a] warrantless search of an automobile is permissible under the search incident to arrest exception when that search is necessary to preserve officer safety or prevent destruction or concealment of evidence of the crime of arrest." *Id.*

¶72 Rather than continuing vacillation of our case law, i.e., *Valdez*, I believe we should adopt analyses derived from our constitution and historical case law. We should recognize the goals of clarity for law enforcement and citizens and heightened protection of individual liberties under article I, section 7 of our constitution. Such a rule of law would allow a search incident to lawful arrest when there is probable cause to believe evidence relevant to the crime of arrest will be found in the vehicle.

¶73 This rule of law provides clarity to law enforcement because officers are trained to be familiar with the probable cause standard. Officers may conduct a search only under specific conditions after the suspect has been arrested,

handcuffed, and placed in a patrol car. Additionally, this approach preserves heightened protections under article I, section 7 because the probable cause standard is a higher bar of protection than the reasonable belief standard under the Fourth Amendment to the United States Constitution. Thus, a probable cause standard for evidence relevant to the crime of arrest is more consistent with constitutional principles than eliminating the relevant evidence prong continued in the United States Supreme Court's *Gant* analysis.

## B. Probable Cause

¶74 Here, the officers in both cases had probable cause to search vehicles for evidence relevant to the crime of arrest. Snapp was lawfully arrested for use of drug paraphernalia because he made a voluntary and noncustodial admission that there was a "meth" pipe in the car. As a result, Trooper Pigott had probable cause to search the car for the "meth" pipe.

¶75 Strong evidence also provided Officer Gregorio probable cause to conclude that marijuana would be found in Wright's car. Wright was arrested under suspicion of possession of marijuana with intent to distribute. Officer Gregorio could smell a strong odor of marijuana coming from the vehicle, noticed Wright's apparent nervousness and a large roll of money in the glove compartment in plain view, and obtained a voluntary admission from Wright (after his *Miranda* rights had been waived) that he had been smoking marijuana. These facts provided probable cause to justify a search of each vehicle for evidence relevant to the crime of arrest.

## CONCLUSION

¶76 I would affirm the Court of Appeals and the convictions in both cases. As opposed to the majority's new standard, I would have this court recognize that the consti-

tution allows a search incident to lawful arrest when there is probable cause to believe evidence relevant to the crime of arrest will be found in the vehicle. The defendant's own words in *Snapp* provided the requisite probable cause, and strong evidence provided the requisite probable cause in *Wright*. Thus, I would uphold the search, admission of the evidence, and convictions of both defendants. Because the majority holds otherwise and continues a confusing analysis justified neither by our constitution nor by relevant precedent, including that of the United States Supreme Court, I respectfully dissent.