IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37222-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CHAUN T. HERKIMER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Chaun Herkimer appeals his convictions of residential

burglary, second degree burglary, and third degree malicious mischief. He argues he

received ineffective assistance of counsel due to counsel's failure to move for suppression

of evidence of an unconstitutional stop and seizure. We decline to review this claim

because the record is insufficient to show actual prejudice. Herkimer's remedy is through

a personal restraint petition.

FACTS

Florence Brock was awakened around 3:30 a.m. one January morning by what

sounded like an object falling near the front door to her house. She got out of her bed to

investigate. As she came down the hall, an inside light was switched on. She knew

someone was in her house. She asked who was there, turned the corner to look, and saw

a young muscular man. He cursed then fled. Brock called 911.

Spokane County Deputy Sheriff Brandon Cinkovich was dispatched to Brock's

house around 3:34 a.m. It was snowing at the time and fresh snow had accumulated on

the ground. The deputy was a few hundred feet from the house when he received the call.

The deputy noticed shoeprints in the snow leading away from Brock's house. At

the same time, he saw a Jeep Cherokee traveling away from the house. The deputy noted

the Jeep was coming from the direction the shoeprints led and was driving very fast for

the snowy conditions. There were no other cars on the road. Based on this, he decided to

follow the Jeep.

The deputy quickly lost sight of the Jeep but was able to track it due to the freshly

fallen snow. The tracks ended in the driveway of a house at 4012 East Third. In the

driveway was the Jeep.

The deputy noticed that the driver and passenger were inside the Jeep. He issued

several commands for them to show their hands, but neither complied. After five to eight

minutes, and as other deputies arrived, the two finally complied and got out of the Jeep.

The driver was identified as Chaun Herkimer.

Herkimer was detained and handcuffed.  At some point, likely near the point of

handcuffing Herkimer, Deputy Cinkovich read *Miranda*[1] warnings to Herkimer and

placed him in the patrol car.  Herkimer commented that the reason he was stopped was

probably because he was driving around Mead late at night and pulled into a stranger's

driveway.

The deputy asked to look at the soles of the shoes that Herkimer and his passenger

were wearing.  Herkimer said that his shoes were "AND1," they were popular in the area,

and many people in Mead wore them.  Report of Proceedings at 135-36.

Sergeant Jerad Kiehn arrived at the scene and looked at the soles of Herkimer's

shoes.  He then went to Brock's house and determined that a shoeprint in the snow

leading up to the house matched the soles of Herkimer's shoes.

Deputy Jessica Baken arrived at Brock's house shortly thereafter.  She followed

Herkimer's shoeprints where they led to Brock's shop.  She noticed the padlock and

doorframe to the shop were damaged and that a box that had been inside the shop was

near the front steps to Brock's house.

The State charged Herkimer with residential burglary, second degree burglary, and

third degree malicious mischief.  Prior to trial, the court conducted a CrR 3.5 hearing to

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

determine the admissibility of Herkimer's statement about pulling into a stranger's driveway.  Defense counsel did not file a suppression motion.  Herkimer was found guilty on all charges.

Herkimer appeals his convictions.

ANALYSIS

Herkimer argues he received ineffective assistance of counsel because counsel should have moved to suppress the shoeprint evidence due to an unconstitutional stop and arrest.  We decline to review his argument.

As a general rule, appellate courts will not consider issues raised for the first time on appeal.  RAP 2.5(a).  However, a claim of error may be raised for the first time on appeal if it is a "manifest error affecting a constitutional right."  RAP 2.5(a)(3).

We treat constitutional errors differently under RAP 2.5(a) because they often result in serious injustice to the accused and might adversely affect public perceptions of the fairness and integrity of judicial proceedings.  *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988).  On the other hand, "permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts."  *State v. Lynn*, 67 Wn. App. 339, 344, 835

4

P.2d 251 (1992).  Consequently, RAP 2.5(a)(3) is not intended to afford criminal

defendants a means for obtaining new trials whenever they can identify some

constitutional error on appeal.  *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251

(1995).  Rather, the asserted error must be "manifest."  *Id.*  "The defendant must identify

a constitutional error and show how, in the context of the trial, the alleged error actually

affected the defendant's rights; it is this showing of actual prejudice that makes the error

'manifest', allowing appellate review."  *Id.*

INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution and article I, section 22 of

the Washington Constitution guarantee a defendant the right of effective assistance of

counsel.  Herkimer's claim thus affects a constitutional right.  The question here is

whether the error is "manifest."

To demonstrate ineffective assistance of counsel, a defendant must make two

showings: (1) defense counsel's representation was deficient, and (2) defense counsel's

deficient representation prejudiced the defendant.  *Strickland v. Washington*, 466 U.S.

668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  With respect to the second showing,

the defendant must show that the trial court likely would have granted the suppression

motion if it had been made. *McFarland*, 127 Wn.2d at 334. Thus, only where the record

on review is sufficiently developed can an appellate court review the claim of error. *Id.*

*Insufficient record to show trial court likely would have suppressed evidence*

Herkimer argues the record is sufficiently developed for this court to conclude the

trial court likely would have suppressed the shoeprint evidence had defense counsel so

moved. We disagree.

*The stop*

An officer is allowed to stop and briefly detain someone as part of an investigative,

*Terry*[2] stop. A *Terry* stop is permissible where the officer had an "individualized,

reasonable, articulable suspicion" based on specific facts that the detained person was or

was about to be involved in a crime. *State v. Flores*, 186 Wn.2d 506, 520, 379 P.3d 104

(2016). A "generalized suspicion that the person detained is 'up to no good' [is not

enough]; the facts must connect the particular person to the *particular crime* that the

officer seeks to investigate." *State v. Z.U.E.*, 183 Wn.2d 610, 618, 352 P.3d 796 (2015).

Officers, being more highly trained than the average citizen, may spot something

suspicious that would go unnoticed by another person. *State v. Moreno*, 173 Wn. App.

479, 493, 294 P.3d 812 (2013). A court reviews "'the totality of the circumstances

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

known to the officer at the inception of the stop.'" *State v. Lee*, 147 Wn. App. 912, 917, 199 P.3d 445 (2008) (quoting *State v. Rowe*, 63 Wn. App. 750, 753, 822 P.2d 290 (1991)).

Here, Deputy Cinkovich arrived at the burgled house and saw shoeprints belonging to the reported burglar. At the same time, he noticed a Jeep speed by from the direction the shoeprints had led. There is little question that the Jeep the deputy saw was the same Jeep he later found parked in a driveway. Further, the driver and passenger of the Jeep remained inside the Jeep, which created the reasonable impression that they parked there to blend in rather than because they had arrived at their destination. Based on all of this, the trial court likely would have rejected the argument that the deputy lacked an individualized, reasonable suspicion that Herkimer was involved in the burglary. Rather, the trial court likely would have concluded that the investigative *Terry* stop was appropriate.

### *The arrest*

Warrantless searches and seizures are presumed invalid unless an exception to the Fourth Amendment and article I, section 7 applies. *State v. Snapp*, 174 Wn.2d 177, 188, 275 P.3d 289 (2012). The burden of proof is on the State to show that one of those exceptions applies, such as probable cause. *State v. Perez*, 5 Wn. App. 2d 867, 871, 428

P.3d 1251 (2018), *review granted*, 193 Wn.2d 1008, 439 P.3d 1075 (2019). "Probable

cause exists where the facts and circumstances within the arresting officer's knowledge

and of which the officer has reasonably trustworthy information are sufficient to warrant

a person of reasonable caution in a belief that an offense has been committed. Probable

cause is not a technical inquiry." *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295

(1986) (footnote omitted). This determination rests on "the totality of facts and

circumstances within the officer's knowledge at the time of the arrest." *State v. Fricks*,

91 Wn.2d 391, 398, 588 P.2d 1328 (1979).

Here, Deputy Cinkovich had reasonable, trustworthy information that a burglary

had occurred. He was dispatched to a specific address to investigate a possible burglary

around 3:30 in the morning and upon arriving there, he saw shoeprints in the fresh snow.

He also had reasonable, trustworthy information that the people in the Jeep parked in the

driveway were the same people who drove quickly past the burgled house. The link

between the shoeprints in the fresh snow and the Jeep is thus the crucial focal point.

Unfortunately, the record before us is underdeveloped in that regard. The State

had no motive to develop those facts at the CrR 3.5 hearing where probable cause was not

an issue. Nor did the State have a motive to develop those facts at trial. At trial, the

State's focus was linking the shoeprints in the fresh snow with the soles of Herkimer's

8

shoes. Because the record is not sufficiently developed for us to know whether the trial court would have granted a motion to suppress, we decline to review this issue. Herkimer's remedy is through a personal restraint petition.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, A.C.J.

Staab, J.

9